OPINION OF THE COURT
Bellacosa, J.
Defendant, by plea of guilty, was convicted of several felonies, including robbery and assault in the second degree, and the Appellate Division affirmed. The issue is whether reversible error was committed by the trial court’s refusal to conduct, sua sponte, a competency-to-stand-trial hearing after the Director of Mid-Hudson Psychiatric Center certified defendant as competent.
At his arraignment and at the request of his counsel, defendant was ordered to undergo a competency examination pursuant to CPL 730.30 because of the unusual occurrences leading up to and including the crimes charged and because defendant had a history of psychiatric instability. He was examined by two psychiatrists and determined to be competent. Defense counsel challenged these findings, moved for a competency hearing, and submitted the report of a privately retained psychiatrist concluding that defendant was incompetent. The Trial Judge then ordered a reexamination by court-appointed psychiatrists who reported that defendant was an incapacitated person. The trial court then found defendant lacked capacity to understand the proceedings or to assist in his own defense and executed an order committing him to treatment for up to one year or until no longer incapacitated (CPL 730.50).
The argument and the focus of the issues presented on this appeal center on the events which followed. After defendant’s 14-day placement at Mid-Hudson Psychiatric Center, the Director of that Center, relying on a clinical summary report, issued a notification of fitness to proceed declaring defendant was no longer incapacitated. At the court date following the notification, 2 Vz weeks later, the People urged that a judicial order of fitness to proceed be made predicated on that most recent fitness report from Mid-Hudson. Defendant’s attorney asked the Trial Judge to hold a competency hearing on his own motion, reasoning that the Trial Judge had a special additional obligation to ensure defendant’s competence in view of the lack of unanimity among the various psychiatric evaluations.
*242 The entire colloquy on the subject at issue shows:
"the court: Well, obviously if you wish to have a hearing, the Court will afford you that opportunity to do so.
"the defendant: Can I say something?
"the court: I would prefer you go through your attorney. Of course, I don’t want you to say something which you may harm yourself.
"the defendant: I realize what’s going on. On the charges they have me, I didn’t do but I am willing to get this over with and do the 4 to 12. I know the system and if I take it to trial, they will give me more time. I understand the Court procedures and I didn’t harm the man. I got shot and I can’t lift my wrist and if they want to give me 4 to 12, fine.
"the court: Well, this raises a lot of questions * * *
"the defendant: I know you are the Judge and he is the District Attorney and she is for me; I am competent.
"the court: And I feel you are competent.
"the defendant: There is no sense in costing more money and delay this agony. And I want her fired. I don’t want her to represent me. I am not any more insane than anybody in this room.
"the court: I am willing at this time on the basis of the reports to indicate the Defendant is competent but I don’t want to deprive him if you are asking for a hearing.
"the defendant: I am not asking for it; she is.
"mrs. lee: Let me state on the record I would like to indicate to the Court that the cases which I was reading last week indicate that it’s the Court’s duty to see that a person is competent before he enters a plea, and that if there is some question about it, the Court must be satisfied by a fair preponderance that he is competent before he allows the plea and I am requesting the Court on its own motion order the hearing.
"the court: I am not going to order a hearing. If you want a hearing, I will give you one. I am satisfied from the reports which have been filed here by the psychiatrists both at Mid-Hudson and at the Utica Psychiatric Center and from talking with the Defendant here in Court, that he understands what he is charged with. And he understands that he is in the Courtroom and that if he wishes to cooperate with you in having a trial, he may do so. However, he also has the right to waive a trial and to plead guilty if he wishes to do so * * *
"mrs. lee: I don’t like to be placed * * *
*243 "the court: And counsel cannot deprive him of that right.”
The court later reiterated: "the court: On the basis of my having seen Mr. Gensler on several occasions and on the reports which have been received and from his statements here today, I have no reason not to believe that he does not understand the nature of the charges against him and that he is not able to help you or other counsel in assisting in his defense.”
The court granted defense counsel’s request for a two-day adjournment for client consultation. At the adjourned date, defense counsel, pursuant to her client’s instruction, joined in accepting the report from Mid-Hudson finding defendant fit to proceed. Prior to allocuting the defendant and accepting his plea, the Trial Judge reaffirmed his finding that, "after talking with the Defendant and after having examined the report from Mid-Hudson, [the court] is of the opinion that the Defendant does understand the nature of the charges and is competent to assist in his defense and the Court at this time accepts the report.” At no time did defense counsel refer to a due process right or to any Federal or State constitutional entitlement and did not address or even imply any constitutional infirmity on the face of or with respect to the application of the provisions of article 730 of the CPL.
The Appellate Division necessarily adopted the findings of competence in affirming the judgment of conviction. "In view of the information the court had before it, it did not abuse its discretion in proceeding without ordering a competency hearing, sua sponte, under CPL 730.30 (1). Before accepting defendant’s plea of guilty, the court considered the notification of fitness to proceed by the director of the Mid-Hudson Psychiatric Center, the accompanying report, the reports of other examining psychiatrists, and defendant’s manner and appearance at the time of the plea” (People v Gensler, 132 AD2d 941, 942).
New York’s meticulously detailed procedure governing this complex area of law and medicine is governed by CPL article 730. Following a determination of fitness to proceed (CPL 730.60 [2]), "the court may, on its own motion, conduct a hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefore by the defendant or by the district attorney. If no motion for a hearing is made, the criminal action against the defendant must proceed” (CPL 730.30 [2] [emphasis added]). CPL 730.60 makes no provision *244 for an in-all-instances hearing under CPL 730.30 (4) based on a difference between a precommitment finding of incapacity and a postcommitment declaration of fitness because the circumstances of each vary by their very nature.
Although defendant’s argument before us is draped in the semantical garb of due process, the unconstitutionality of no provision of CPL article 730 was ever asserted and is not argued even before us at this time. In effect, therefore, defendant’s argument concedes the legislatively prescribed trial court authority exercised on a proffered state of facts in the record. Yet, from that necessarily accepted premise, defendant’s argument leaps to a mandatory due process hearing requirement and the dissent endorses the leap.
Notably from a defense strategy standpoint, neither defendant nor his counsel affirmatively requested a hearing. Indeed, defendant insisted he did not want one and wished to conclude the criminal proceeding. Defense counsel, when held to the record before us, expressly refrained from asking for a hearing, instead urging the court to grant one only on the court’s own initiative, and then two days later expressly "accepted” the Mid-Hudson Psychiatric Center report finding defendant competent as a basis for the court’s judicial determination of competency.
The Trial Judge cannot be said to have erred under these circumstances and under this statutory scheme, predicated as we get the case on undisturbed findings supported in the record by expert evidentiary material and judicial observations. The undisturbed findings were based upon the most recent psychiatric report at the hospital and on the strategic stance of defense counsel before the trial court. This all culminated in the court’s decision that defendant was able to understand the nature of the charges against him and that he was capable of assisting counsel in his own defense. "The fact that defendant had a previous history of mental disturbance does not in itself prove that he was insane at the time of this judgment” (People v Boundy, 10 NY2d 518, 521; People v Flora, 306 NY 615).
The Trial Judge in such circumstances has, under the statute, the authority to adopt expert medical proof available to him, coupled with all other evidence and his own observations of the defendant, and then to come to a right and fair judicial determination of fitness to proceed. A Trial Judge should be upheld when he complies with the letter and spirit *245 of a set of governing statutes. This is different from People v Armlin (37 NY2d 167) where the trial court deviated from the express statutory prescription of defendant’s rights (see also, People v Christopher, 65 NY2d 417, 421, 423). In Armlin, the court relevantly added that "a defendant is not entitled, as a matter of right, to have the question of his capacity to stand trial passed upon before the commencement of the trial, if the court is satisfied from the available information that there is no proper basis for questioning the defendant’s sanity” (id., at 171). Also, Silverstein v Henderson (706 F2d 361) restricted, as it should be, to its particular facts (see, Phillips v Lane, 787 F2d 208, 215; United States ex rel. Mireles v Greer, 736 F2d 1160, 1167), is not to the contrary and we reject the appellant’s invitation to read it and apply it more broadly.
The short answer to the dissent is that defendant’s extensive psychiatric record, coupled with the Trial Judge’s progressive personal observations of defendant, wholly fail to establish that a "sufficient doubt” existed which would, independently of the applicable statutes, require the trial court to sua sponte order a hearing on constitutional due process grounds (see, Drope v Missouri, 420 US 162, 180; Pate v Robinson, 383 US 375, 387). A recurrent finding in the psychiatric reports generated by the court-appointed psychiatrists, defendant’s retained psychiatrist, the institutional psychiatrist, and conceded by the defendant in his examinations, was that his periodic coping problems revolved around his failure to take his medication and that once on medication he made an excellent adjustment. It was on this entire history, record and pattern that he was found competent to be tried as of that time before the Trial Judge.
Even under our own precedents, there was no "reasonable ground” on the record for the Trial Judge to sua sponte order, a competency hearing under CPL article 730 at that time based on what was then before him (see, People v Armlin, 37 NY2d 167, 168, supra; People v Smyth, 3 NY2d 184, 187). To superimpose on the applicable Criminal Procedure Law statutes, at our level at this time, a constitutional due process sua sponte hearing requirement, based on nebulous, selective factors, themselves all weighed by the lower courts along with other preponderating and concrete evidence, would unnecessarily mandate a hearing in all such cases and neither Silverstein v Henderson (706 F2d 361, supra) nor Pate v Robinson (383 US 375, supra) so require or suggest.
*246 The litany of cases relied upon by the dissent do not support a result different from the one we reach on this record. For example, in People v Bangert (22 NY2d 799), the trial court failed to seek the advice of psychiatric experts or otherwise make any inquiry into defendant’s competency to stand trial despite indications that should have alerted the court to the issue. The same is true of Pate v Robinson (383 US 375, supra) and Drope v Missouri (420 US 162, supra), and their requirement of a "hearing” must be understood in that context. Nothing in those cases suggests that a plenary hearing with cross-examination of psychiatric experts is the only way to satisfy due process. Here, the Trial Judge was alert to the potential problem, invoked the full range of procedures and protections contained in CPL article 730 and appropriately relied on the fruits of all those procedures before concluding that defendant was competent to stand trial without the necessity of a further hearing on the court’s own motion. People v Smyth (3 NY2d 184, supra) provides no support for defendant or the dissent, because in that case we rejected the defendant’s coram nobis application even though no hearing or inquiry of any kind had been conducted at the trial court. Most significantly, our decision in People v Armlin (37 NY2d 167, supra) turned on the failure of the Trial Judge to comply with CPL article 730; here, the Trial Judge meticulously complied with the array of statutory protections. Finally, People v Gonzalez (20 NY2d 289) is plainly distinguishable from the present case because the psychiatric evaluations of the defendant in that case were sufficiently equivocal to require further inquiry.
Moreover, we do not disagree with the dissent that due process requires, in some instances, that the trial court inquire into a defendant’s competence whether or not a request has been made for such an inquiry (People v Armlin, 37 NY2d 167, 171, supra). The statute so requires. Here, however, a detailed inquiry was made according to the dictates of CPL article 730 and the Judge had relevant and complete data before he made his factual and constitutionally satisfactory determination that the defendant was competent to proceed and that an evidentiary hearing on the point was not required on his own motion. Neither the record nor governing legal principle provide any basis for us to differ or interfere with the trial court’s conclusions in this respect. Despite the dissent’s mischaracterization of the court’s reasoning, the logical *247 compatibility of our handling of the interrelated issues is plain.
Judicial override of a carefully drawn legislative syllabus in this kind of case on a constitutional due process basis is particularly inappropriate (see, e.g., People v Patterson, 39 NY2d 288, 305-307 [Breitel, Ch. J., concurring], and compare with People v Kohl, 72 NY2d 191). It would make purposeless the hearing request under the statute by either defense counsel or the prosecutor, a hearing which is mandated if so requested; and it would substitute the word "must” for "may” in the complementary statutory authorization dealing with judicial sua sponte orderings of such hearings. In the circumstances of this case, a constitutionally mandated sua sponte rule is undue process.
Once the issue of fitness was factually resolved in a constitutionally and procedurally valid framework (as noted, defendant has never challenged the statutes themselves), the right to waive trial and plead to the charge is controlled by the rationale of People v Reason (37 NY2d 351, 354). Just as with the right to waive the assistance of counsel and proceed pro se, "[Resolution of this issue * * * does not require a further psychiatric examination and yet another formal hearing to determine mental competency” (People v Reason, supra, at 355).
We agree with the Appellate Division that there was no abuse of discretion and we conclude that there was no constitutional deprivation in this case. Defendant’s other arguments have been reviewed and also lack merit.
Accordingly, the order of the Appellate Division should be affirmed.