*759 OPINION OF THE COURT
Chief Judge Kaye.
Article 730 of the Criminal Procedure Law sets out the procedures courts of this State must follow in order to prevent the criminal trial of a defendant “who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense” (CPL 730.10 [1]). The central issue on this appeal is whether the trial court abused its discretion as a matter of law by failing, on its own, to order a competency hearing under article 730. We hold that it did not, and therefore affirm the order of the Appellate Division, which reached the same conclusion.
I.
On the morning of December 14, 1994, defendant, armed with a semi-automatic rifle and a hunting knife, held a classroom of students hostage in a lecture hall at the State University of New York at Albany. During the two-hour ordeal, defendant made numerous threats and demanded the presence of various university and public officials. He claimed that he was the victim of an experiment in which a microchip was implanted in his brain, and wanted to expose the people responsible for victimizing him. The standoff concluded when several hostages overpowered defendant. During the struggle, defendant shot and seriously injured one hostage, and bounded another with his knife.
The following day, after defendant’s arraignment, Albany City Court ordered an examination pursuant to CPL article *760 730 to determine whether defendant was competent to stand trial. After reviewing the reports of two psychiatric examiners, the court determined that defendant was incapacitated. The court issued a temporary order of observation, pursuant to which defendant was committed to the Mid-Hudson Psychiatric Center (see, CPL 730.40). According to Mid-Hudson records, when defendant was admitted, he was “irritable, easily angered and tense.” His judgment was “severely impaired” and “[h]is insight into his troubles was nil.” Defendant suffered from delusions “that ‘a chip’ was implanted in his brain and he has a fiberoptic antenna and the government was experimenting on him.” Defendant was diagnosed with alcohol abuse, cocaine-induced psychotic disorder with delusions and paranoid personality disorder.
Despite these problems, the Mid-Hudson records reveal that defendant “showed steady improvement in all areas in a rather short time.” After two months of counseling — defendant was not given any medication — a Mid-Hudson psychiatrist reported that defendant appeared “rational and logical in speech and thought,” was “very cooperative to the interview situations” and “was able to follow the rules and regulations of the hospital.” The psychiatrist further found that defendant had “above average intelligence,” as well as “satisfactory knowledge of courtroom procedure and the duties of court officials. He knows his lawyer * * * and he feels very sorry about what he did but knows he cannot change the consequences. He states he is going to go along with his lawyer’s suggestions.”
Accordingly, Mid-Hudson’s director certified defendant fit to proceed and return to court, and defendant was discharged from Mid-Hudson on March 20, 1995. A Grand Jury indicted defendant on 15 counts.[1]
From the time of his arraignment on the indictment on March 20, 1995 until the start of jury selection on January 3, 1996 (five days before the trial opened), the Trial Judge had several opportunities to observe defendant’s interaction with his lawyer and understanding of the trial process. While in Albany County Court for his arraignment, defendant responded to the Judge’s greeting and request for defendant’s date of birth. At a suppression hearing held on November 16, 1995, *761 defendant expressed his desire to be absent from that hearing. In order to determine whether the waiver of the right to be present was voluntarily and knowingly made, the court questioned defendant and his attorney as follows:
“me. lynch [defense counsel]: * * * I have discussed it with my client. There is no particular need for his personal appearance. * * * I would move that Mr. Tortorici’s request that he waive his physical presence as distinguished from his legal presence through me be granted. * * *
“the court: Mr. Tortorici do you understand the words I’m using? Mr. Tortorici * * * I’m directing it to you. Do you understand what Mr. Lynch—
“the defendant: I speak English, Judge. I don’t desire to be present. I made that point clear. That is all.
“the court: Mr. Lynch has spoken with you with regard to your personal presence being dispensed with at this pretrial hearing.
"the defendant: I do not desire to be present. No further comments.”
After receiving further assurances from defendant’s lawyer that he had explained to defendant his right to be present, and that defendant expressed his desire not to attend the hearing, the court granted defendant’s request.
In a letter dated December 27, 1995, defendant’s lawyer advised the court that defendant also wished to waive his right to be present throughout the trial. The letter stated:
“As the Court is well aware, the defendant has previously been found fit to proceed with trial. He has clearly indicated to me the desire to be absent during the trial. He has consistently maintained a position of refusing to actively participate in the proceedings. He has directed me to proceed with the presentation of the defense, inclusive of the defense that he is not guilty by reason of mental disease or defect. * * *
“Please be advised that I have fully informed my client of the nature of his right to be present at trial, as well as the consequences of allowing the *762 trial to proceed in his absence. Once again, my client acknowledged his understanding of the process and further directed me to proceed, in absentia, with the presentation of the defense.”
On January 3, 1996, at the outset of jury selection, counsel informed the court that he had “consulted with Mr. Tortorici, as late as this morning,” and that defendant still wished to waive his right to be present throughout the course of the entire trial. The court questioned defendant as follows:
“the court: Mr. Tortorici * * * your attorney has indicated to me that you do not wish to be present during the jury selection, which will occur today, and during this trial, which will occur in the next week to ten days. Is that your position, Mr. Tortorici?
“the defendant: Yes, it is, Judge.
“the court: Do you understand that you have a constitutional right to be present at both this jury selection and the trial proper?
“the defendant: Yes, that is correct.
“the court: And do you understand that it would be my intention, if I grant Mr. Lynch’s request that you be removed from the courtroom in a few moments, do you understand that jury selection will continue in your absence and that the trial will continue in your absence?
“the defendant: I am aware.
“the court: [Explaining that defendant can change his mind and decide to be present later in the proceedings] Do you understand that point, Mr. Tortorici?
“the defendant: Yes, I do. * * *
“[the people]: * * * [The] People would ask that the record be clear that the defendant understands exactly what he’s waiving and his ability to assist in his own defense, and that it’s clear on the record that he has discussed this defense with Mr. Lynch and that is his desire at this time.
“the court: Mr. Tortorici, I have asked you earlier, and I will reask it. All of these matters that you’re *763 waiving at this point, your right to be present, your right to consult with Mr. Lynch, your right to look at those jurors, your right to speak to Mr. Lynch at every stage of this proceeding, do you realize that if I waive your appearance, you won’t be able to participate in that regard?
“the defendant: Let me make this clear, please: This trial, the bad memory, it’s a nuisance to me. I want to have as little to do with these proceedings as possible.
“the court: Okay * * * you understand [Mr. Lynch is] going to proceed in your absence on your behalf? * * *
“the defendant: I understand.”
The court granted defendant’s motion to waive his right to be present, and informed defendant that he could change his mind and be present at any time in the future. On every day of the eight-day trial, at the beginning of the day’s proceedings, the court asked defense counsel whether he had conferred with defendant and whether defendant still wished to be absent from the proceedings. Counsel responded in the affirmative every day.
On December 29, 1995, in order to rebut the defense that defendant was not responsible for his actions by reason of mental disease or defect (see, Penal Law § 40.15), the People moved for an order directing defendant to submit to an examination pursuant to CPL 250.10 (3).[2] The purpose of the examination was to determine “whether or not this defendant, at the time of the crime, lacked responsibility due to mental disease or defect.” The motion was granted, and defendant was examined by Dr. Lawrence Siegel on January 4, 1996, for approximately one hour.
Three days later, the parties received Dr. Siegel’s nine-page report of his meeting with defendant. In the report, Dr. Siegel stated that he was unable to assess defendant’s mental state at the time of the offense, but opined that defendant was “incapable of rational participation in court proceedings” and *764 “not fit to proceed to trial.” According to the report, defendant at times displayed delusional, irrational behavior during the examination, and was often hard to understand. When Dr. Siegel focused defendant on the court proceedings, however, the report’s paraphrase of the conversation indicates that defendant understood the charges against him:
“What are his charges? Attempted Murder, Kidnapping. Every other violation in the book.’ What is the date of the alleged offense? ‘December 14, 1995.’ Does he mean 1995, or 1994? ‘1994.’ Where is this said to have occurred? ‘University of Albany.’ ”
Furthermore, Dr. Siegel indicated that defendant clearly understood the role of the major participants in the proceedings against him: “He is able to name his attorney as Mr. Lynch and understands Mr. Lynch is supposed to help him. He says the D.A. prosecutes, the jury decides if one is guilty or not guilty, and the judge is the ‘arbitrator between the prosecuting attorney and defense attorney, and instructs the iury on matters of the law.’ ”
Dr. Siegel’s discussion of the examination states that many of defendant’s ideas were tainted by delusions regarding the government’s attempts to control him. However, Dr. Siegel also observed that “[m]uch of Mr. [Tortorici’s] communication regarding his legal situation makes sense. He is aware of the names of the charges against him and has an understanding of what he is alleged to have done. * * * He has more than a rudimentary understanding of the process of trial and the roles of the Judge, jury, prosecutor and defense attorney.”
After the examination took place and again after the report was distributed, the court allowed both sides to be heard on the issue of Dr. Siegel’s report. The court observed that in light of its own observations of defendant, and representations by both the People and defense counsel that they were ready to proceed, “[njothing has occurred in this court and to this [c]ourt’s observation that would lead it on its own initiative to review the expert determination made by the psychiatrists of Mid Hudson earlier on, that this defendant is in fact fit to proceed. And therefore, we will proceed.”
On February 16, 1996, after trial, a jury convicted defendant of first degree assault, second degree kidnapping, first degree reckless endangerment, first degree criminal use of a firearm and fourth degree criminal possession of a weapon. Defendant appealed, claiming that in light of Dr. Siegel’s report, County *765 Court erred in not sua sponte ordering a competency hearing. A divided Appellate Division affirmed, holding that “County Court did not abuse its sound discretion * * * in failing to sua sponte conduct a competency hearing after defendant had previously been certified fit to proceed to trial” (People v Tortorici, 249 AD2d 588, 589).
Defendant now appeals pursuant to leave granted by a Justice of the Appellate División. Because County Court did not abuse its discretion as a matter of law by failing, sua sponte, to order a competency hearing, we affirm.
II.
During the course of a criminal action, whenever a court has a “reasonable ground for believing that a defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, it is the duty of the court to direct him to be examined in these respects” (People v Smyth, 3 NY2d 184, 187; see also, Pate v Robinson, 383 US 375, 387 [hearing must be held when there is “sufficient doubt” about defendant’s competence]; Drope v Missouri, 420 US 162, 180).
Nevertheless, a defendant is presumed to be competent (People v Gelikkaya, 84 NY2d 456, 459), and the law “is well settled that a defendant is not entitled, as a matter of right, to have the question of his capacity to stand trial passed upon before the commencement of the trial, if the court is satisfied from the available information that there is no proper basis for questioning the defendant’s sanity” (People v Armlin, 37 NY2d 167, 171). Moreover, a defendant’s history of psychiatric illness does not in itself call into question defendant’s competence to stand trial (People v Morgan, 87 NY2d 878, 881; People v Gelikkaya, supra, 84 NY2d, at 459).
CPL article 730 provides New York’s courts with a “meticulously detailed procedure governing this complex area of law and medicine” (People v Gensler, 72 NY2d 239, 243, cert denied 488 US 932).[3] CPL 730.30 (1) provides that “the court wherein the criminal action is pending must issue an order of examina *766 tion when it is of the opinion that the defendant may be an incapacitated person.” Pursuant to CPL 730.60 (2), in cases where, as here, the institution in which a defendant has been confined has determined that the defendant is no longer incapacitated, “the court may, on its own motion, conduct a hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefor by the defendant or by the district attorney. If no motion for a hearing is made, the criminal action against the defendant must proceed” (CPL 730.30 [2]). The determination of whether to order a competency hearing lies within the sound discretion of the trial court (People v Morgan, 87 NY2d 878, 879, supra; People v Gensler, supra, 72 NY2d, at 247). The sole issue before us is whether the trial court abused that discretion, not whether it might have been reasonable to order a hearing.
Although defendant premises his argument on Dr. Siegel’s report, a Trial Judge determining whether a competency hearing is necessary may also consider “expert medical proof available to him, coupled with all other evidence and his own observations of the defendant” (People v Gensler, supra, 72 NY2d, at 244). Considering the evidence before County Court regarding defendant’s competence, we conclude that the court did not abuse its discretion in failing, on its own, to order a hearing.
The Mid-Hudson report certifying defendant competent to proceed to trial explicitly stated that defendant “had satisfactory knowledge of courtroom procedure and the duties of court officials.” It also stated that he knew who his lawyer was and was going to follow the lawyer’s suggestions, and that he was sorry for his actions and understood their consequences. This report contained the most recent opinion of a psychiatrist who examined defendant for the purpose of determining competency to stand trial, and therefore was entitled to significant weight.
The Trial Judge additionally could consider his “progressive personal observations of defendant,” during which defendant clearly indicated that he understood his right to be present in the courtroom and consult with counsel, and also understood the proceedings that would ensue in his absence (id., at 245; see also, People v Morgan, supra, 87 NY2d, at 880). These observations included the court’s questioning of defendant on January 3, 1996, the day before Dr. Siegel examined him. *767 Furthermore, it is significant that the court continued to monitor defendant’s understanding of his rights and the proceedings against him throughout the duration of the trial, even though defendant himself did not appear in court. Every day during the trial, before the jury entered the courtroom, the Trial Judge asked defendant’s lawyer if defendant still wished to be absent from the courtroom. Counsel always responded in the affirmative, indicating that he had spoken with defendant regarding the defense.
It is also significant that at no time after defendant was certified as competent “did defense counsel, who was in the best position to assess defendant’s capacity, raise the issue of defendant’s fitness to proceed or request an examination pursuant to CPL 730.30” (People v Gelikkaya, 84 NY2d 456, 460, supra). On the contrary, defense counsel consistently made clear that defendant was competent and the defense was ready to proceed. For example, in his letter advising the court of defendant’s desire to be absent during the trial, written a week before Dr. Siegel’s examination, counsel emphasized that “[a]s the Court is well aware, the defendant has previously been found fit to proceed with trial,” and stated that counsel had fully informed defendant of his right to be present at trial as well as the consequences of his absence. Counsel concluded, “Once again, my client acknowledged his understanding of the process and further directed me to proceed, in absentia, with the presentation of the defense” (emphasis added).
Even after Dr. Siegel’s examination of defendant (which defendant’s lawyer attended), defendant’s lawyer emphasized that “the law of this case is that there had been a previous determination, after Mr. Tortorici’s stay at Mid Hudson, that he was in fact fit to proceed.” He further stated that “we are ready to proceed with the defense. And I’m not making any motions at this time.” After the court revisited the issue upon receipt of Dr. Siegel’s report, defense counsel again stated “the defense’s position remains the same, the defense is ready to proceed.” Thus, defendant’s lawyer not only failed to move for a competency hearing — which would have required the court to conduct one (see, CPL 730.30 [2]) — but he also represented numerous times that defendant wished for the trial to proceed, notwithstanding Dr. Siegel’s report. This clearly distinguishes the case before us from the two United States Supreme Court cases on which defendant primarily relies. In Pate v Robinson (383 US 375, 384, supra), the record showed “that counsel throughout the proceedings insisted that Robinson’s present *768 sanity was very much in issue.” In fact, “the prosecutor himself suggested at trial” that a psychiatric evaluation of defendant’s present sanity was necessary (id., at 384). Likewise, in Drope v Missouri (420 US 162, 165, supra), defendant’s counsel filed a motion for continuance “ ‘for the reason that the defendant is not a person of sound mind and should have a further psychiatric examination before the case should be forced to trial.’ ” Although the motion was unopposed, the court denied it on procedural grounds.
The conscious choice of defendant’s lawyer not to request a hearing (or to request the court to order a hearing sua sponte) is even more noteworthy given defendant’s insanity defense, for which counsel presented the testimony of four psychiatric experts. Considering defense counsel’s presence during Dr. Siegel’s examination of defendant, and his orchestration of a defense based on defendant’s lack of capacity to commit the crimes, counsel’s failure to request a competency hearing was significant “from a defense strategy standpoint” (People v Gensler, 72 NY2d 239, 244, cert denied 488 US 932, supra). Indeed, a sua sponte competency hearing might well have been viewed by the defense as interfering with its strategy regarding the insanity defense, as well as its unequivocal determination to proceed to trial at that time and before that particular jury.
While Dr. Siegel observed that defendant expressed numerous delusional ideas that evidenced an “apparent psychosis,” he also unequivocally stated that defendant’s communication regarding his legal situation made sense, and that defendant was able to name the charges against him and the role of the Trial Judge, jury and lawyers.[4] Dr. Siegel also highlighted defendant’s ability to name his own lawyer and understanding that his lawyer is supposed to help him. These are strong indicators that, regardless of defendant’s undeniable psychiatric problems, defendant did indeed have “capacity to understand the proceedings against him [and] to assist in his own defense” (CPL 730.10 [1]; People v Smyth, 3 NY2d 184, 187, supra). Dr. Siegel’s conclusions that defendant “is incapable of rational participation in court proceedings” and “is not fit to proceed to trial” are thus undercut by the evidence set forth in *769 his own report. In fact, as the Appellate Division observed, many of Dr. Siegel’s findings “themselves satisfy the legal standard of fitness to proceed” (People v Tortorici, 249 AD2d 588, 590, supra).
To imbue Dr. Siegel’s report with the supervening significance urged by defendant and the dissent would oust the trial court of its independent statutory responsibility to determine whether a competency examination or hearing is required (see, CPL 730.30 [1] [the court “must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person” (emphasis added)]; CPL 730.30 [2] [criminal action must proceed if, after a competency hearing, “the court is satisfied that the defendant is not an incapacitated person” (emphasis added)]). In light of all the evidence before him, including Dr. Siegel’s report, the Trial Judge was within his discretion in making the requisite judicial determination that no competency hearing was required.
Defendant’s remaining contentions are without merit.
Accordingly, the order of the Appellate Division should be affirmed.

. The indictment included two counts of assault in the first degree; four counts of kidnapping in the second degree; four counts of reckless endangerment in the first degree; three counts of attempted murder in the second degree; one count of criminal use of a firearm in the first degree; and one count of criminal possession of a weapon in the fourth degree.

. CPL 250.10 (3) provides, in relevant part, that when a defendant “serves notice of intent to present psychiatric evidence, the district attorney may apply to the court, upon notice to the defendant, for an order directing that the defendant submit to an examination by a psychiatrist or licensed psychologist.”

. Here, as in People v Gensler (supra, 72 NY2d, at 244), “Although defendant’s argument * * * is draped in the semantical garb of due process, the unconstitutionality of no provision of CPL article 730 was ever asserted and is not argued even before us at this time. In effect, therefore, defendant’s argument concedes the legislatively prescribed trial court authority exercised on a proffered state of facts in the record.” (See also, Drope v Missouri, 420 US 162, 172-173, supra [the State statutory procedures regarding inquiry *766 into a defendant’s competence, if followed, were constitutionally adequate in both Drope and Pate v Robinson, 383 US 375, supra].)

. Dr. Siegel’s opinion as to defendant’s competency to stand trial was, as the trial court observed, “beyond the scope of what he was supposed to accomplish.” Furthermore, prior to his one-hour meeting with defendant, Dr. Siegel did not review the full records of defendant’s psychiatric treatment at Mid-Hudson and the Albany County Correctional Facility, and he could not rule out the possibility that defendant was feigning mental illness.