■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHERYL WOJES, Appellant. [763 NYS2d 103] —Spain, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered May 14, 2001, upon a verdict convicting defendant of the crimes of arson in the third degree and criminal mischief in the fourth degree.

Following a jury trial, defendant was convicted of third degree arson and fourth degree criminal mischief for her conduct on July 7, 2000, in intentionally damaging a residential building located at 833-837 Cutler Street in the City of Schenectady, Schenectady County, by starting a fire, recklessly damaging nearby property. The City reportedly held title to the property having foreclosed due to nonpayment of taxes by a member of defendant's family and, three weeks prior to the fire, gave defendant notice to vacate within 30 days upon discovering that she was residing there. The evidence at trial included defendant's oral and written admissions to intention-

ally setting the fire—by lighting a book of matches, throwing it on a chair, fanning the flames and leaving the building—out of vengeance against the City for the eviction. Eyewitnesses reported seeing defendant leave the house at the time of the fire and walk down the street, carrying a smoldering cushion and stating that she had fallen asleep with a lit cigarette. A neighbor also looked inside the building and observed a couch cushion engulfed in flames. Sentenced to concurrent terms of imprisonment, the maximum being an indeterminate term of 5 to 15 years, and ordered to pay restitution, defendant appeals.

Defendant's initial contention is that County Court erred by failing to order a competency hearing. However, at the request of defense counsel, the court ordered defendant to be examined by two psychiatrists, both of whom examined defendant and submitted reports to the court prior to the suppression hearing concluding that defendant was competent to stand trial (*see* CPL 730.30 [1], [2]; *People v May*, 301 AD2d 784, 785 [2003]). Defense counsel did not request a hearing and, in view of the medical experts' consensus that defendant was competent, we perceive no basis in the record upon which to conclude that the court abused its discretion in failing sua sponte to conduct such a hearing (*see* CPL 730.30 [2]; *People v Tortorici*, 92 NY2d 757, 765-767 [1999], *cert denied* 528 US 834 [1999]; *People v Gensler*, 72 NY2d 239, 244-246 [1988], *cert denied* 488 US 932 [1988]; *People v Horan*, 290 AD2d 880, 882 [2002], *lv denied* 98 NY2d 638 [2002]). Defendant's asserted history of psychiatric illness is not documented in the record before us and would not, by itself, call into question her competence to stand trial (*see People v Tortorici, supra* at 765). Moreover, a review of the record as a whole fails to support defendant's claim that defense counsel's decision not to request a competency hearing lacked a legitimate reason or constituted ineffective assistance of counsel (*see People v Dunn*, 261 AD2d 940, 941 [1999], *lv denied* 94 NY2d 822 [1999]; *People v Wheeler*, 249 AD2d 774, 775 [1998]; *People v Charlton*, 192 AD2d 757, 759-760 [1993], *lv denied* 81 NY2d 1071 [1993]).

Defendant also contends that all of her statements to police and fire officials on the day of the fire, July 7, 2000, should have been suppressed as the product of an initial illegal police detention and that all but the first statement followed her invocation of her right to remain silent, which was not scrupulously honored. The suppression testimony established that defendant, while walking in the vicinity of the fire and appearing disheveled and with leg bandages, was approached by a police sergeant who asked for her name, from where she was

coming and if he could talk to her. She matched the general description of a person who was a possible suspect. Defendant provided incomprehensible responses, appeared highly intoxicated and was unstable on her feet, prompting the sergeant to ask "if she wouldn't mind having a seat" in his police vehicle so someone could speak with her. Defendant sat in the rear seat, the door was briefly closed and she fell asleep. Contrary to defendant's claims, the record does not support the conclusion that she was forcibly detained, seized or arrested (*see People v Hollman*, 79 NY2d 181, 184-185 [1992]). Rather, the sergeant's nonthreatening, basic questions constituted an initial request for information, which was supported by objective, credible— but not necessarily criminal—reasons (*see id.*; *People v Jackson*, 251 AD2d 820, 822 [1998], *lv denied* 92 NY2d 926 [1998]). At most, the sergeant undertook a common-law right of inquiry based upon a founded suspicion that criminal activity was afoot (*see People v Hollman, supra* at 184-185, 191; *People v De Bour*, 40 NY2d 210, 223 [1976]; *People v Jackson, supra* at 822-823).

A short time later, a police detective seated in the front seat of the patrol car asked defendant, seated in the rear seat with the door open, what happened, to which defendant replied that a young boy had thrown an object into the building causing the fire. Defendant was not in custody and no *Miranda* warnings were required (*see People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]). When asked if she would provide a written statement to this effect, defendant replied, "I won't give you a statement and I won't sign anything." Rather than unequivocally invoking her right to remain silent, defendant simply refused to provide and sign a written statement at that time and, accordingly, the subsequent noncustodial questioning was permissible (*see People v Sprague*, 267 AD2d 875, 878-879 [1999], *lv denied* 94 NY2d 925 [2000]; *see also People v Hendricks*, 90 NY2d 956, 957 [1997]). About an hour later, the City fire chief spoke to defendant on the sidewalk and, when asked, defendant attributed the fire to a space heater and, unable to explain the two other reasons she had given for the fire, was taken to the hospital for treatment of her leg burns.

Defendant also moved to suppress oral and written statements she made to the fire chief on July 25, 2000 in a conference room at the fire department offices—admitting she intentionally set the fire to retaliate against the City's eviction—when she went there to inquire about gaining access to the building, which was boarded up and had been condemned. She claims that her statements were coerced and involuntary since the fire chief refused her access to retrieve her belongings

unless she agreed to disclose the cause of the fire. However, the suppression testimony fully supports County Court's finding that the questioning was voluntary and not custodial. Defendant was repeatedly advised that she could leave and, in fact, did so after signing the statement, no promises were made that she could access the building if she provided a statement, the questioning was not in any manner coercive or threatening, and there was no showing that her will was overcome in any respect so as to support a finding that her statement was other than voluntary (*see* CPL 60.45; *People v Guillery*, 267 AD2d 781, 781-782 [1999], *lv denied* 94 NY2d 920 [2000]; *cf. People v Anderson*, 42 NY2d 35, 38 [1977]).

Next, defendant argues that the weight of the evidence failed to support the criminal mischief conviction due to the absence of proof that the radiant heat damage to a neighboring house was a foreseeable consequence of her conduct. Viewing the evidence in a neutral light, we find that while a different finding would not have been unreasonable, the weight of the credible evidence supported the jury's conclusion that when defendant fanned the flames on the fire she had intentionally set and then left the building, she was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" (Penal Law § 15.05 [3]) that her conduct would cause such damage to nearby property, and that this disregard "constitut[ed] a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]; *see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Coneen*, 191 AD2d 839, 840 [1993], *lv denied* 81 NY2d 1012 [1993]).

Also lacking in merit are defendant's claims that evidentiary errors by County Court require a new trial. First, the detective who initially questioned defendant about the fire did not improperly offer an opinion at trial that this fire was the result of arson but, rather, explained the type of investigation being undertaken and that he did not know the cause of the fire. Further, we discern no error in County Court's redaction of defendant's July 7, 2000 hospital medical records in view of the absence of any testimony establishing a foundation for or explaining their contents (*see* CPL 60.10; CPLR 4518 [a]; *People v Kennedy*, 68 NY2d 569, 575 [1986]; *cf. People v Cratsley*, 86 NY2d 81, 88-90 [1995]; *People v Scott [Mack]*, 294 AD2d 661, 663-664 [2002], *lvs denied* 98 NY2d 731, 732 [2002]). Similarly, the court's redaction of the hospital psychiatric screening document was proper, given the lack of foundation (*see People v Cratsley, supra* at 88-90) or relevance, where defendant did not raise an insanity defense (*see* Penal Law § 40.15 [2]; *cf. People v Milot*, 305 AD2d 729, 731 [2003]).

Finally, defendant challenges the propriety of the restitution orders and the imposition of the maximum sentence on the arson conviction. First, with regard to the order requiring defendant to pay $3,600 in reparations to the resident of the adjacent home, defendant did not request a hearing and the neighbor's uncontroverted testimony sufficiently established the cost of repairs necessitated by these offenses, obviating the need for a hearing (*see* Penal Law § 60.27 [2]; *People v Kim*, 91 NY2d 407, 410 [1998]; *People v Consalvo*, 89 NY2d 140, 144 [1996]; *see also People v Horne*, 97 NY2d 404, 410-412 [2002]). However, while a court is authorized to order the payment of restitution to a public entity such as a city fire department for expenses incurred in the "restoration, rehabilitation or clean-up of the site of the arson" (Penal Law § 60.27 [10]; *see People v Horne, supra* at 412), such restitution is expressly limited to situations where "no other victim who is a person is seeking restitution in the case" (Penal Law § 60.27 [10]; *see* Penal Law § 60.27 [11]). Since restitution was sought on behalf of the neighbor, County Court lacked the authority to also order restitution to the City. With regard to County Court's imposition of the maximum sentence for the arson conviction, we do not find that it is harsh and excessive in view of defendant's previous criminal conduct in setting a fire and failure to address her substance abuse problems or to take responsibility for her actions, all supporting the court's conclusion that she represents a real "danger to the community."

Defendant's remaining claims either lack any merit or are unpreserved for our review.

Cardona, P.J., Mercure, Rose and Kane, JJ., concur. Ordered that the judgment is modified, on the law, by deleting the order of $2,054.54 restitution to the City of Schenectady Fire Department, and, as so modified, affirmed.