People v Richardson (2017 NY Slip Op 07640)





People v Richardson


2017 NY Slip Op 07640


Decided on November 2, 2017


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 2, 2017

107573

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
GEORGE RICHARDSON, Appellant.

Calendar Date: September 6, 2017

Before: Peters, P.J., Garry, Rose, Aarons and Rumsey, JJ.


Stephen W. Herrick, Public Defender, Albany (Theresa M. Suozzi of counsel), for appellant.
P. David Soares, District Attorney, Albany (Michael C. Wetmore of counsel), for respondent.


Peters, P.J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Albany County (Ceresia, J.), rendered November 24, 2014, upon a verdict convicting defendant of the crimes of criminal contempt in the first degree (two counts) and criminal contempt in the second degree.
Defendant was charged by two indictments with criminal obstruction of breathing or blood circulation, assault in the third degree, criminal contempt in the second degree and two counts of criminal contempt in the first degree. The charges stem from an incident in which defendant allegedly strangled his former paramour (hereinafter the victim) and then repeatedly violated a no-contact order of protection entered in her favor while incarcerated on the underlying charges. Following a jury trial, defendant was convicted of the criminal contempt counts, acquitted of the remaining charges and sentenced, as a second felony offender, to an aggregate prison term of 2 to 4 years. He appeals.
We reject defendant's contention that County Court erred in finding that he was competent to stand trial. "The key inquiry in determining whether a criminal defendant is fit for trial is whether he or she has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding — and whether he or she has a rational as well as factual understanding of the proceedings against him or her" (People v Phillips, 16 NY3d 510, 516 [2011] [internal quotation marks, brackets and citation omitted]; see CPL 730.10 [1]; People v Kendall, 91 AD3d 1191, 1192 [2012]). In undertaking this task, "a court may take into account [*2]the findings of any competency examination as well as its own observations of [the] defendant" (People v Passaro, 86 AD3d 717, 718 [2011]; see People v Phillips, 16 NY3d at 517; People v Gensler, 72 NY2d 239, 244 [1988], cert denied 488 US 932 [1988]). Upon review, we accord substantial deference to the trial court's determination (see People v Phillips, 16 NY3d at 517; People v Hadfield, 119 AD3d 1217, 1219 [2014], lv denied 25 NY3d 989 [2015]; People v Surdis, 77 AD3d 1018, 1018-1019 [2010], lv denied 16 NY3d 800 [2011]).
Defendant was examined by two psychologists, each of whom found that he was competent to stand trial. Although one of the psychologists noted that defendant appeared irrational at times and opined that defendant suffered from some form of psychotic disorder, both ultimately concluded that defendant understood the judicial process, the charges against him and the roles of the various participants, and that he was capable of assisting in his own defense. Indeed, defendant's own testimony at the hearing confirmed his understanding and appreciation of the legal proceedings and the nature of the offenses with which he was charged. County Court "fully credit[ed]" the testimony and opinions of the examining psychologists and, having observed defendant during the several court appearances on the two indictments, further noted that defendant "listen[ed] attentively" and interacted in a cooperative manner with his attorney during the competency hearing and characterized his behavior as similarly appropriate during all of the prior appearances. Upon the record before us, we discern no basis upon which to disturb County Court's ruling that defendant was competent to stand trial (see People v Wright, 107 AD3d 1398, 1399 [2013], lv denied 23 NY3d 1026 [2014]; People v Kendall, 91 AD3d at 1192-1193; People v Passaro, 86 AD3d at 718-719; People v Terry, 85 AD3d 1485, 1486 [2011], lv denied 17 NY3d 862 [2011]; People v Dewey, 18 AD3d 894, 895 [2005]).
Defendant also asserts that the verdict is against the weight of the evidence, specifically claiming that the evidence failed to establish the element of intent necessary to sustain the contempt charges. To convict defendant of criminal contempt in the first degree under Penal Law § 215.51 (b) (ii), the People were required to prove that, "in violation of a duly served order of protection, or such order of which the defendant has actual knowledge because he or she was present in court when such order was issued," defendant "intentionally place[d] or attempt[ed] to place [the victim] in reasonable fear of physical injury, serious physical injury or death by . . . engaging in a course of conduct or repeatedly committing acts over a period of time." To convict defendant of criminal contempt in the first degree under Penal Law § 215.51 (b) (iv), the People were required to prove that defendant, in violation of such an order of protection, "repeatedly ma[de] telephone calls to [the victim], whether or not a conversation ensue[d], with no purpose of legitimate communication," and did so with the "intent to harass, annoy, threaten or alarm [the victim]." To secure a conviction of criminal contempt in the second degree, the People were required to prove that defendant intentionally disobeyed or resisted the lawful process or other mandate of a court in a case other than one involving or growing out of a labor dispute (see Penal Law § 215.50 [3]).
The proof at trial established that, in response to the alleged incident of domestic abuse that formed the basis for the assault and criminal obstruction of breathing or blood circulation charges, an order of protection was issued in January 2013 that prohibited defendant from contacting or communicating with the victim by any means. Such order was issued in court and was signed by defendant, indicating his receipt thereof. The People introduced jail call records and recordings demonstrating that defendant attempted to call the victim multiple times in February and March 2013, while the order of protection was in place, and actually spoke to the victim on three such occasions. During those phone calls, defendant made references to the underlying charges, ordered the victim to recant her statements to police, stated that a warrant had been issued for her arrest and made various express and implied threats towards the victim [*3]and her daughter. The victim explained that, although she initially wanted to speak with defendant, she subsequently felt scared and upset due to the statements that he made during those phone calls and requested that defendant not contact her anymore. Despite this request, the victim testified that she received numerous letters in defendant's handwriting that contained a return address listing defendant's name, prison identification number and the address of the detention facility where he was being held. Over a dozen such letters were admitted into evidence, all of which are postmarked on dates during which the no-contact order of protection was in place. Many of the letters contained explicit or implicit threats of violence against the victim. In one such letter, defendant warned, "don't get no funny ideas bitch[,] I'm gonna be watching you real close[.] Start talking stupid again and you know what I mean and it's [a] rap for you." In another, defendant stated, "I ain't gonna kill you" — while highlighting the words "kill you" — and threatened an "ass whooping" upon his release from confinement. In yet another, defendant advised the victim that she "f***ed with the wrong n***a" and that he was "gonna get [her] back regardless," cautioning her "not [to] underestimate [his] ability and capabilities."
At trial, defendant testified to his awareness that an order of protection was in effect prohibiting him from having contact with the victim, but claimed that the victim initiated the contact by providing him with her phone number and that he did not intend to threaten or harass the victim when he communicated with her. He presented the testimony of a psychiatric nurse who opined that defendant suffers from a "major psychiatric illness," and now contends that, in light of this impairment, he lacked the requisite intent necessary to be convicted of the charged crimes [FN1]. It is settled, however, that "defendant's intent may be inferred from the surrounding circumstances, including [his] words or conduct, and [any] 'competing inferences to be drawn regarding defendant's intent, if not unreasonable, are the exclusive domain of the finders of fact, not to be disturbed by this Court'" (People v McLean, 128 AD3d 1106, 1108 [2015] [internal citation, brackets and ellipsis omitted], lv denied 25 NY3d 1204 [2015], quoting People v Gordon, 23 NY3d 643, 650 [2014]; see People v Davis, 133 AD3d 911, 913-914 [2015]; People v Gordon, 119 AD3d 1284, 1286 [2014], lv denied 24 NY3d 1002 [2014]). Considering the content of the phone calls and letters and the reasonable inferences that may be drawn therefrom, a jury could rationally conclude that defendant possessed the requisite intent to commit the charged crimes. Accordingly, although a different verdict would not have been unreasonable, after viewing the evidence in a neutral light and according due deference to the jury's factual assessments and credibility determinations (see People v Garcia, 141 AD3d 861, 863 [2016], lv denied 28 NY3d 929 [2016]; People v Gordon, 119 AD3d at 1286), we are satisfied that defendant's convictions are supported by the weight of the evidence (see People v Pham, 118 AD3d 1159, 1160 [2014], lv denied 24 NY3d 1087 [2014]; People v Audi, 88 AD3d 1070, 1072-1073 [2011], lv denied 18 NY3d 856 [2011]; People v Jordan, 77 AD3d 406, 407 [2010], lv denied 15 NY3d 953 [2010]).
Finally, we are unpersuaded that defendant's sentence is harsh and excessive. Given his extensive criminal record, his repeated willingness to violate a court order and his refusal to show remorse or accept responsibility for his actions, we find no abuse of discretion or extraordinary circumstances warranting a modification of the sentence in the interest of justice (see People v Hill, 148 AD3d 1469, 1471 [2017], lv denied 29 NY3d 1080 [2017]; People v Lawing, 110 AD3d 1354, 1355 [2013], lv denied 22 NY3d 1200 [2014]; People v White, 23 [*4]AD3d 764, 765 [2005]). Nor is there any evidence in the record to support defendant's claim that the sentence was imposed as a penalty for exercising his constitutional right to a jury trial (see People v Watson, 150 AD3d 1384, 1387 [2017], lv denied 29 NY3d 1135 [2017]; People v Williams, 138 AD3d 1233, 1238 [2016], lvs denied 28 NY3d 932, 939 [2016]; People v Scaringe, 137 AD3d 1409, 1419 [2016], lv denied 28 NY3d 936 [2016]).
Garry, Rose, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Notably, defendant did not assert the affirmative defense of a mental disease or defect at trial (see People v McLean, 128 AD3d 1106, 1110 [2015], lv denied 25 NY3d 1204 [2015]; People v Foster, 52 AD3d 957, 959 n [2008], lv denied 11 NY3d 788 [2008]).