■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent; v ROBERT M. MOTTER, Appellant. [653 NYS2d 378] —Spain, J. Appeal from a judgment of the County Court of Delaware County

(Estes, J.), rendered May 8, 1995, upon a verdict convicting defendant of the crimes of attempted manslaughter in the first degree, assault in the first degree and grand larceny in the third degree.

Defendant, a 23-year-old male, was charged with both the attempted murder and assault of his mother and with the shooting death of Jeannie Fenmore, his mother's cousin, which occurred in the Town of Hamden, Delaware County, in 1993. Defendant was indicted for murder in the second degree, attempted murder in the second degree, assault in the first degree and grand larceny in the third degree; he was alleged to have acted in concert with his brother, James Hendrickson, in all counts of the indictment.

On or about December 23, 1993, defendant and Hendrickson are alleged to have argued with their mother and Fenmore at their mother's home. Defendant got angry and left the house; he and Hendrickson went to a bar where they drank heavily and discussed moving out of the mother's house. They returned to the house, where Hendrickson argued again with their mother while defendant was upstairs packing his bag. Defendant heard a single shot which later was determined to have caused the death of Fenmore. He then went downstairs to join Hendrickson who was beating his mother with the rifle used to shoot Fenmore; at that point defendant began punching and kicking his mother in an attempt "to put her out". As a result of the beating, the mother suffered a collapsed lung, broken ribs, a shattered elbow and a broken shoulder; after she was rendered unconscious, defendant and Hendrickson gathered some things from the house and left in her truck.

The mother regained consciousness and went to a neighbor's house and asked them to call the police. The Delaware County Sheriff received the homicide report and requested assistance from the State Police. After interviewing the mother, investigators determined that defendant and Hendrickson had probably gone to either Long Island, Virginia or Pennsylvania. Numerous "be on the lookout" messages were broadcast by the Sheriff's office describing the suspects and the vehicle in which they were traveling, stating that the suspects were wanted in connection with a homicide and that they were believed to be armed and dangerous.

Investigators were eventually able to identify a specific address in Strasburg, Virginia, from the mother's address book and they notified the Strasburg Police Department. They requested that the Strasburg police check the address given for signs of defendant and Hendrickson. The morning after the ho-

micide, the Strasburg police notified the New York investigators that the truck was spotted at the reported address and placed the residence under surveillance. However, as this was occurring, defendant and Hendrickson left the residence in the truck and headed for the interstate. Virginia law enforcement authorities apprehended defendant and Hendrickson on State Route 55, advised them of their *Miranda* rights and turned them over to the Strasburg Police Department. At the police station, defendant and Hendrickson were interrogated and videotaped statements were obtained from both suspects. At the conclusion of the questioning, defendant and Hendrickson were transported to jail where they were held until they were extradited to New York.

After a *Huntley* and suppression hearing, County Court ruled that the statements obtained by Virginia police from defendant were admissible, holding that defendant had been properly advised of his rights, that he waived those rights, and that the statements were voluntarily given and not a product of police coercion. County Court also found that the Virginia police had probable cause to arrest defendant. After a jury trial, defendant was convicted of attempted manslaughter in the first degree, assault in the first degree and grand larceny in the third degree; defendant was acquitted of murder in the second degree. He was sentenced to consecutive indeterminate terms of imprisonment of 5 to 15 years for attempted manslaughter and assault, and $2^1/_3$ to 7 years for grand larceny. Additionally, he was required to pay restitution in the amount of $20,627.76. Defendant appeals.

We affirm. Initially, we reject defendant's claims that attempted manslaughter does not exist as a crime and that County Court erred in submitting both charges of murder in the second degree and attempted murder in the second degree and manslaughter in the first degree and attempted manslaughter in the first degree to the jury. Defendant's reliance on *People v Martinez* (179 AD2d 935, *mod* 81 NY2d 810) is misplaced. In cases where a defendant offers an affirmative defense which negates intent and it is offered to mitigate or reduce a charge of attempted murder, the crime of attempted manslaughter can be charged (*see, People v Robinson*, 143 AD2d 376, 377, *lv denied* 73 NY2d 789; *see also, People v Angel*, 185 AD2d 356, *lv denied* 80 NY2d 1025, 81 NY2d 1069). Here, defendant cannot raise the defense of extreme emotional disturbance for certain crimes charged in the multicount indictment and then exclude it for other crimes. The crimes in question arose out of the same course of conduct, leading to the conclu-

sion that defendant's state of mind was consistent throughout. Accordingly, County Court correctly submitted to the jury the charge of attempted murder in the second degree as well as the charge of attempted manslaughter in the first degree.

We also reject defendant's contention that he cannot be found guilty of aiding and abetting an attempted manslaughter when he suffers from extreme emotional disturbance. Defendant was convicted of attempted manslaughter in the first degree instead of the second degree murder charge to which Hendrickson pleaded guilty; there is merit to the People's assertion that this finding by the jury took into consideration defendant's claim of extreme emotional disturbance. Penal Law § 20.00 provides: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." This statute "imposes accessorial liability on an accomplice not for aiding or encouraging another to reach a particular mental state, but rather for intentionally aiding another to engage in *conduct* which constitutes the charged offense while himself 'acting with the mental culpability required for the commission' of that offense" (*People v Flayhart*, 72 NY2d 737, 741). In order to sustain a finding of liability on the basis of aiding and abetting, it must be shown that a defendant " ' "share[d] the intent or purpose of the principal actor" ' " (*People v Kaplan*, 76 NY2d 140, 144, quoting *People v La Belle*, 18 NY2d 405, 412, quoting 1 Burdick, Crimes § 221, at 297).

Here, it is clear from defendant's own statement that he shared the intent of Hendrickson in both the murder of Fenmore and the assault and attempted murder of his mother. During his videotaped interview in Virginia, defendant described his conduct during the crime as "helping his brother take care of two people" and stated that when he heard the single shot, he said that he said to himself "Whoop, there's one. Let's do the other one." Thereafter, defendant went downstairs and assisted Hendrickson in the assault on his mother, acknowledging during his statement that his intent was to "put her out". It is evident that defendant acted in concert with Hendrickson to bring about the intended result. Accordingly, defendant's defense of extreme emotional disturbance does not preclude a finding of guilt for the crime of aiding and abetting an attempted manslaughter in the first degree.

We also reject defendant's claim that the statements he made to the Virginia police are products of an illegal arrest and should have been suppressed. Probable cause to arrest exists when the police can "show that they possessed sufficient information to convince a person of ordinary intelligence that a crime was committed by such individual" (*People v Alpern*, 217 AD2d 853, 854, *lv denied* 87 NY2d 897). It is clear from the testimony that the officers who sent the message to "be on the lookout" for defendant and Hendrickson had probable cause to arrest them. The New York police were acting on a statement given to them by the mother, a victim and eyewitness of the attack, which supplied more than enough information to give them probable cause to arrest defendant (*see, People v Rivera*, 221 AD2d 667, *lv denied* 87 NY2d 1024). Under the "fellow officer rule", probable cause to arrest can be imputed to the arresting officer "when [he or she is] acting at the direction of another law enforcement officer who has the requisite probable cause" (*People v Maldonado*, 86 NY2d 631, 635). Thus the Virginia police officers who arrested defendant, acting on the instructions and information provided to them by New York law enforcement officers, possessed the requisite probable cause to do so. After he was arrested, defendant was advised of his *Miranda* rights, which he waived, and then he was interrogated; he gave the Virginia police a statement which was properly admitted into evidence against him.

Defendant's assertion that his right to counsel was violated is without merit. Defendant claims that he did not waive his right to counsel in the presence of counsel after the filing of a Virginia arrest warrant; he correctly contends that the right to counsel attaches in New York upon the filing of an accusatory instrument. However, in our view, the filing and service of the Virginia arrest warrant did not give rise to New York's right to counsel. An arrest warrant does not initiate formal criminal proceedings; rather, it is an additional step in the investigatory phase and, therefore, the indelible right to counsel does not yet attach at this early stage (*see, People v West*, 81 NY2d 370, 373; *see also, People v Ridgeway*, 101 AD2d 555, 559-561, *affd* 64 NY2d 952). Notably, a general right to counsel exists even at the investigatory stage of the proceedings against a defendant. Here, although it is true that defendant's right to the presence of counsel to assist him with the coercive power of the State had attached, defendant knowingly and voluntarily waived that right (*see, e.g., People v West, supra*). Therefore, contrary to defendant's contention, his videotaped statements were properly admitted into evidence.

We also reject defendant's claim that his statements should

have been suppressed because the State Police delayed the filing of criminal charges against him in New York so as to deprive him of his right to counsel during questioning. Significantly, defendant offers no legal authority to support his contention. A State Police Investigator testified that he filed an initial felony complaint with a Town Justice in the Town of Hamden, Delaware County, in order to obtain the arrest warrants required in Virginia to have defendant extradited to New York. There is no indication in the record to support defendant's claim that the police delayed filing the felony complaint until after defendant gave a statement or additional statements to the Virginia police. The need for the arrest warrant arose only because defendant fled the jurisdiction where the crime occurred; it would be an affront to the fundamental elements of justice to allow defendant's own voluntary statements to be suppressed as a result of his flight to Virginia. Because defendant cannot show conclusive evidence of an " 'unnecessary delay' " and because he waived his *Miranda* rights, County Court was correct in denying defendant's motion to suppress his statements (*see, People v Ortlieb*, 84 NY2d 989, 990). County Court was also correct in holding that there was no need to repeat defendant's *Miranda* warnings as he was continually in custody and there was no extended break in questioning.

We also reject defendant's contention that County Court erred in excluding the videotaped statements that Hendrickson gave to the police at his arrest and in holding that those statements did not fall within the hearsay exception of statements against penal interest.* "To qualify for admission into evidence as a declaration against the maker's penal interest the following elements must be present: first, the declarant must be unavailable as a witness at trial; second, when the statement was made the declarant must be aware that it was adverse to his penal interest; third, the declarant must have competent knowledge of the facts underlying the statement; and, fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability" (*People v Settles*, 46 NY2d 154, 167). Here, County Court found that the first three required elements existed; however, the court kept the statements out under the fourth prong, finding that evidence sup-

---

* It should be pointed out that Hendrickson accepted a plea arrangement in satisfaction of the charges against him. Given this arrangement, it is unlikely that any statement that he made could be considered as against his penal interest.

porting the trustworthiness and reliability of Hendrickson's statements was lacking. A statement, such as defendant seeks to enter into evidence here, is not admissible as an admission against penal interest because there is not sufficient evidence to attest to its reliability (*see generally*, *People v Hincapie*, 217 AD2d 401, 402, *lv denied* 86 NY2d 843). Factors which must be considered when determining the admissibility of such statements are the declarant's motivation, the internal consistency of the comments, the declarant's personality and the availability of supporting evidence (*see*, *People v Shortridge*, 65 NY2d 309, 313). Applying these factors to this case, the record amply supports County Court's ruling to exclude Hendrickson's videotaped statement to the police.

Defendant's assertion that his right to cross-examine prosecution witnesses was improperly curtailed by County Court is also without merit. On cross-examination, defense counsel attempted to question defendant's mother on issues that were not raised on direct examination and, further, after calling defendant's mother as a witness for the defense, defense counsel claims that his questioning of her was once again improperly limited. Defense counsel questioned defendant's mother on cross-examination on issues outside of subjects raised on direct examination. Defense counsel also asked leading questions of defendant's mother on direct examination, a manner of questioning that is unacceptable. In light of the questions posed by defense counsel, County Court did not act improperly by limiting the scope of the cross-examination of defendant's mother or by curtailing the use of leading questions on direct examination.

Next we reject defendant's claim that County Court improperly allowed the People to introduce evidence of defendant's prior acts of fraud, asserting that the admission of this evidence was "greatly prejudicial to defendant's credibility". In our view, the evidence sought to be used by the People was directly related to defendant's credibility. Also, because the evidence of prior bad acts was limited to tax fraud and the filing of false information with the Department of Social Services, it is unlikely that those crimes would be too prejudicial in the eyes of the jury. Defendant stands charged with a crime of violence, not fraud; therefore, defendant's claim of prejudice is without merit (*see*, *People v Sandoval*, 34 NY2d 371).

We further reject defendant's contention that County Court erred in instructing the jury on defendant's defense of mental disease and defect in stating that the jury must consider whether defendant was able to "appreciate the nature and con-

sequences of Hendrickson's actions". Because defendant was charged as an accessory to Hendrickson in the murder of Fenmore and in the brutal beating and attempted murder of his mother, County Court's charge was proper. A great deal of defendant's criminal liability stems from the actions of Hendrickson and, due to the fact that they were believed to be acting in concert, it is only logical that defendant, to be held fully liable for those crimes, must have been able to "know and appreciate * * * [t]he nature and consequences of such conduct * * * or * * * [t]hat such conduct was wrong" (Penal Law § 40.15 [1], [2]). The conduct in question is not defendant's alone, but defendant's conduct along with that of Hendrickson. Accordingly, it was proper to include in the jury charge the issue of whether defendant understood that the actions taken by Hendrickson were wrong.

Finally, defendant's contention that this sentence is "excessive and cruel and inhuman treatment" is without merit. Sentencing lies within the sound discretion of the trial court and, absent an abuse of that discretion or extraordinary circumstances, this Court will not disturb the sentence (see, People v Mackey, 136 AD2d 780, lv denied 71 NY2d 899). In our view, County Court was well within its discretion in arriving at the sentence in this case. Defendant was involved in a heinous crime involving the murder of one individual and the severe beating of his mother. The fact that he had not previously been involved with the law does not negate the magnitude of his crime, nor does it justify a reduction in his sentence.

Mikoll, J. P., Casey, Yesawich Jr. and Carpinello, JJ., concur. Ordered that the judgment is affirmed.