OPINION OF THE COURT
ClPARICK, J.
This appeal presents the question whether the trial court abused its discretion in allowing the introduction of expert testimony as to the money handling aspects of street-level, multi-member narcotics operations where the evidence presented was of a single transaction involving only the defendant and an undercover officer. Under the facts presented, we hold that the trial court abused its discretion. We conclude, however, that the error was harmless and, therefore, affirm the Appellate Division order upholding defendant’s conviction.
*10 On March 3, 1999, a narcotics “buy-and-bust” field team of three was organized to conduct operations in central Harlem. The team included a primary undercover officer in charge of hand-to-hand drug transactions, a “ghost” undercover officer responsible for ensuring the safety of the primary undercover and an arresting officer.[1] On his way to meet other field team members, the “ghost” undercover officer saw defendant across the street on 128th Street between Lenox and Fifth Avenues. Defendant was standing curbside and looking back and forth. As the undercover walked toward Fifth Avenue, defendant began to walk in the same direction. He then stopped at the street corner to look at the undercover.
Concerned that defendant was suspicious of police activity, the undercover crossed over to defendant and asked him if anyone was “working” the street. He then asked defendant for a “dime,” or $10 worth of crack cocaine. After some hesitation, defendant responded “I’ll hook you up” and said he had what the officer wanted. The undercover gave defendant $10 in prerecorded buy money, and defendant reached into his pocket to retrieve a white-topped vial which he gave to the undercover. The vial contained a white powder that later tested positive for cocaine.
After the purchase, the undercover attempted to lure defendant to the location of the other field team members. The undercover told defendant that he needed to get money from his cousin who lived nearby and that, if the “product” was good, he would use the money to buy more. Defendant assured the undercover that he was going to like the cocaine, and the two turned the corner onto Fifth Avenue. After they walked side-by-side about a quarter of the block toward 129th Street, defendant stopped abruptly. Defendant told the undercover that he would “hook up” with him again the following day, and walked back toward 128th Street.
When defendant turned the corner, the undercover radioed his field team that he had made a “positive buy” and described defendant as a black male wearing bright orange pants, a light blue Yankees baseball cap and multiple jackets. He also described the location and direction in which defendant was walking. The field team’s arresting officer arrived minutes later and discovered defendant, who matched the description, standing where the undercover first encountered him. Defendant was *11 arrested and searched. A white-topped vial containing white powder was recovered from defendant’s person, but no prerecorded buy money was found. The substance in the vial tested positive for cocaine. Shortly after defendant’s arrest, and about five minutes after the drug purchase, the undercover made a drive-by confirmatory identification of defendant as the seller.
Defendant was charged in an indictment with criminal sale of a controlled substance in the third degree (Penal Law § 220.39) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16). In defense counsel’s opening remarks to the jury, she suggested that—because the undercover was preparing to “ghost” another transaction at the time he encountered defendant—the buy-and-bust operation was faulty. The People called the “ghost” undercover officer as a witness and he described the intricacies of street-level narcotics operations. Specifically, over defendant’s objection, the court permitted him to testify as to the different roles and functions performed by persons involved in multi-member street-level narcotic sales and how these individuals worked together. The undercover used this expert testimony to explain why police do not always recover buy money following buy-and-bust operations.
Defendant was acquitted of criminal possession of a controlled substance in the third degree (Penal Law § 220.16), but convicted of criminal sale of a controlled substance in the third degree (Penal Law § 220.39) and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and sentenced, as a second felony offender, to concurrent terms of 4x/2 to 9 years and 1 year, respectively. The Appellate Division affirmed the conviction (304 AD2d 375 [2003]). A Judge of this Court granted defendant leave to appeal and we now affirm.
Relying on this Court’s recent decision in People v Brown (97 NY2d 500 [2002]), defendant argues that the trial court abused its discretion in permitting the introduction of the undercover’s expert testimony on street-level narcotics transactions because the evidence presented was that defendant acted alone. There was no evidence of accomplices.[2]
In Brown, the defendant was arrested following a buy-and-bust operation (97 NY2d 500 [2002]). As no drugs or prerecorded buy money were found on her person, the defendant *12 argued to the jury that the police misidentified her as the seller (see Brown, 97 NY2d at 503). In response to this misidentification defense, the People offered expert testimony regarding multi-level narcotics transactions to explain why those accused of selling narcotics may not have either drugs or prerecorded buy money on their person shortly after a sale (Brown, 97 NY2d at 504-505). We held that such expert testimony may be appropriate as “the average juror is [un]aware of the specialized terminology used in the course of narcotics street sales or the intricacies of how drugs and money are shuttled about in an effort to prevent their discovery and seizure by the police” (Brown, 97 NY2d at 505 [citations omitted]).
Nonetheless, “[w]e caution[ed] that such expert testimony is not necessarily proper in every drug sale case where a defendant asserts a misidentification defense” (97 NY2d at 506). In Brown, an adequate factual basis existed to permit expert testimony on street-level narcotics transactions because the testimony of “the undercover officer detailed the sequence of events and the interactions of the various individuals he encountered before, during and after the cocaine sale” (97 NY2d at 506). The mere absence of drugs or marked money on the accused, however, cannot by itself serve “as an automatic basis to introduce expert testimony addressing the general characteristics of street drug transactions” (97 NY2d at 506).
Here, the undercover did not testify that defendant interacted with other persons before, during or after the sale. Instead, he testified that—at the time of the transaction—“no one but [defendant] was in the area” and that defendant did not “interact” with any other persons. The undercover spoke only with defendant and gave the prerecorded buy money directly to defendant in exchange for a vial that defendant retrieved from his own pocket.[3] Given that no evidence existed that the transaction at issue involved anyone other than defendant, the trial court abused its discretion in permitting the expert testimony regarding multi-individual, street-level narcotics operations.
We conclude, however, that this error was harmless because there is otherwise overwhelming proof of the defendant’s guilt and there is no significant probability that the jury would have *13 acquitted the defendant had it not been for the error that occurred (People v Crimmins, 36 NY2d 230, 242 [1975]).
Excising the improper expert testimony, there was overwhelming evidence that defendant was guilty of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. The undercover gave detailed testimony that he purchased the cocaine from defendant, and that he had a fairly extensive interaction with defendant—walking and talking to him for at least a quarter of a street block after the sale—and that he had made a studied observation of defendant’s face. Soon thereafter, the undercover transmitted to his field team that he made a positive buy and described defendant as a black male wearing bright orange pants, a blue Yankees baseball cap and multiple jackets. The arresting officer arrived at the location within minutes and discovered defendant, fitting the description. A few minutes later, the undercover officer made a drive-by confirmatory identification of defendant as the person from whom he had purchased drugs several minutes earlier.
Further, the arresting officer testified that he recovered narcotics from defendant’s person—a white-topped vial of cocaine, which matched the one defendant sold to the undercover. He also testified, without objection, that the failure to locate prerecorded buy money following a transaction is “not uncommon . . . . It’s often hidden or gotten rid of real fast . . . .” Finally, the police chemist testified that the white substance contained in both the vial used in the sale and the matching vial found on defendant contained cocaine. In light of this overwhelming proof, there is no significant probability that, had it not been for the admission of the undercover’s expert testimony, the jury would have acquitted the defendant (see Crimmins, 36 NY2d at 242).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Kaye and Judges G.B. Smith, Rosenblatt, Graffeo, Read and R.S. Smith concur.
Order affirmed.

. At trial only the arresting officer and the “ghost” undercover testified.

. Trial of this matter was held in October 1999, before our Brown decision.

. The arresting officer testified that he also stopped another man that he saw smoking a crack pipe and walking about 20 feet ahead of defendant, but did not observe any interaction between the two men. Neither did this second man have any of the prerecorded buy money in his possession.