◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRENDA RABIDEAU, Appellant. [918 NYS2d 247]—

Egan Jr., J.

One morning in April 2008, Ricky Rabideau arrived at his residence in the Town of Mooers, Clinton County and encountered defendant, his estranged wife, in a vehicle. After a short verbal altercation, Rabideau was shot one time in the back, but escaped the scene in a passing truck. After a short standoff with police, during which a small fire was set inside the residence, defendant surrendered. Defendant was thereafter indicted for attempted murder in the second degree (count one), attempted assault in the first degree (count two), assault in the second degree (count three), criminal use of a firearm in the first degree (count four), and reckless endangerment in the first degree (count five). Defendant's subsequent motion to suppress three statements made to the police was denied by Supreme Court after a *Huntley* hearing. After a jury trial, defendant was found

guilty of all charges except reckless endangerment in the first degree. She was later sentenced to an aggregate prison term of 12 years, with three years of postrelease supervision. Defendant now appeals.

Initially, we are not persuaded that Supreme Court erred in denying defendant's motion to suppress three statements. "[S]pontaneous statements made while in custody which are not the product of questioning or its functional equivalent clearly are admissible regardless of whether *Miranda* warnings were given" (*People v Starks*, 37 AD3d 863, 864 [2007] [internal quotation marks and citation omitted]; *see People v Scott*, 47 AD3d 1016, 1019-1020 [2008], *lv denied* 10 NY3d 870 [2008]). Testimony at the *Huntley* hearing revealed that, at the conclusion of the standoff and while defendant was in custody in the yard outside of the residence, a State Police sergeant observed smoke emanating from the residence and instructed another officer to "get some people and go in and make sure the fire was out," at which point defendant stated, "it's just a bag of potato chips and he deserved it anyway." Shortly thereafter, while en route to the hospital in an ambulance, defendant made a statement to an emergency medical technician, "I don't care if I live or die." This comment was overheard by an accompanying officer. Finally, after being evaluated at the hospital, defendant was released and transported to Mooers Town Court for arraignment. After this court appearance, while defendant was sitting in a police car outside the court, a civilian approached the car and gave defendant words of encouragement, to which defendant responded, "He should have died for all he's done to me, the bastard." While all three of these statements were made while in custody and at a time when defendant had not been advised of her *Miranda* rights, they constituted spontaneous statements and were not the result of police interrogation (*see People v Henderson*, 74 AD3d 1567, 1569 [2010], *mod* 77 AD3d 1168 [2010]; *People v Starks*, 37 AD3d at 864; *People v Jones*, 169 AD2d 986, 988 [1991], *lv denied* 77 NY2d 996 [1991]).

We next address defendant's argument that Supreme Court erred in permitting the People, in their case-in-chief, to introduce evidence of two prior uncharged crimes committed by defendant, specifically, two instances when, after her separation from Rabideau, defendant entered the marital residence and destroyed certain personal property belonging to him. In a prosecution for attempted murder in the second degree, a defendant may raise the affirmative defense of extreme emotional disturbance (hereinafter EED) (*see* Penal Law §§ 110.00, 125.25 [1] [a]; *People v Veras*, 175 AD2d 710, 713 [1991, Smith, J., concur-

ring in part and dissenting in part], *lv denied* 78 NY2d 1130 [1991]), which, if successful, serves to reduce a charge of attempted murder in the second degree to attempted manslaughter in the first degree (*see People v Ledesma*, 300 AD2d 72, 72 [2002], *lv denied* 100 NY2d 563 [2003]; *People v Motter*, 235 AD2d 582, 584 [1997], *lv denied* 89 NY2d 1038 [1997]; *People v Robinson*, 143 AD2d 376, 377 [1988], *lv denied* 73 NY2d 789 [1988]). The defense must be established by a preponderance of the evidence and be supported by proof that the defendant "suffered from a mental infirmity not rising to the level of insanity at the time of the [incident], typically manifested by a loss of self-control" (*People v Roche*, 98 NY2d 70, 75 [2002]; *accord People v Diaz*, 15 NY3d 40, 45 [2010]; *People v Smith*, 1 NY3d 610, 612 [2004]). Where such an affirmative defense is presented, the People have the right to present rebuttal evidence that the defendant did not suffer from a mental infirmity on the date of the incident (*see* CPL 260.30 [7]; *People v Harris*, 98 NY2d 452, 489 [2002]; *People v Schicchi*, 13 AD3d 470, 471 [2004], *lv denied* 4 NY3d 856 [2005]; *People v Gabriel*, 241 AD2d 835, 837 [1997], *lv denied* 91 NY2d 892 [1998]; *compare People v Santarelli*, 49 NY2d 241, 247 [1980]), which may consist of evidence of uncharged criminal conduct if it has a tendency to disprove the defendant's claim that he or she suffered from mental infirmity such that he or she lacked control over his or her actions (*see People v Santarelli*, 49 NY2d at 248).

Here, Supreme Court correctly ruled that the People could present evidence—to rebut defendant's proffered affirmative defense—that after her separation from Rabideau, defendant entered the former marital residence on two occasions—in December 2007 and January 2008—and destroyed personal property belonging to him. However, although it was improper to permit the People to offer this evidence during their case-in-chief, we find this error to be harmless in light of the overwhelming evidence of defendant's guilt, together with the lack of any significant probability that the jury would have acquitted defendant had it not been for this error (*see generally People v Smith*, 2 NY3d 8, 12-13 [2004]; *People v Maricevic*, 52 AD3d 1043, 1046 [2008], *lv denied* 11 NY3d 790 [2008]).

Contrary to defendant's contention, we find, viewing the evidence in a light most favorable to the People, that legally sufficient evidence exists to support the jury's verdict on counts one, two and four (*see* Penal Law §§ 110.00, 125.25 [1]; § 120.10 [1]; § 265.09 [1] [a]; *People v Rolle*, 72 AD3d 1393, 1396 [2010]; *People v Saxton*, 75 AD3d 755, 758 [2010], *lv denied* 15 NY3d 924 [2010]; *People v Dorsey*, 3 AD3d 590, 591 [2004]). The trial

testimony established that, in April 2008, defendant and Rabideau were in the process of obtaining a divorce and were living apart, with Rabideau residing in the former marital residence. During the morning hours of April 29, 2008, defendant went to the marital residence while her husband was at work to search for personal property she suspected Rabideau had not disclosed in the divorce proceedings. Defendant entered the residence and removed a Marlin .22 magnum rifle owned by Rabideau, which she placed in the back seat of her car. While defendant was still at the residence, Rabideau returned and an argument ensued. After telling defendant to leave the property, Rabideau went inside the residence and, through a window, observed defendant remove the rifle from her car and walk with it towards the house. As she approached the door, Rabideau heard defendant say "Come on. [Y]ou son of a bitch. Where are you? You hiding?" He saw defendant trying to body slam the door, at which point he called 911. Rabideau heard two gun shots as he headed towards the back of the house and down the basement stairs in an effort to escape through the basement door. As he exited the basement door, Rabideau heard two more gun shots. Once outside, Rabideau ran towards his truck and observed defendant inside the home, attempting to open a window. Rabideau reached his truck and squatted behind the driver's side door of the vehicle. Defendant fired two more shots in the direction of the truck, with one bullet striking the fender of the truck and the other striking a helmet stored inside a garage beyond the truck. Seeing an oil delivery truck coming down the road, Rabideau began to run across the yard towards it, but was shot in the back and fell to the ground. After getting back up, Rabideau ran to the oil truck, jumped on it and was driven off. As he arrived on the scene, the truck's driver, who was acquainted with defendant, observed her holding the rifle with two hands as if she were hunting something. As they drove away, Rabideau heard more gun shots.

After receiving 911 calls related to the incident, a State Police investigator telephoned the residence and reached defendant. An approximate 30-minute taped phone conversation then ensued, during which defendant at various times stated that she shot her husband, that she "was just scaring him and . . . didn't even mean to hit him" and that she "wanted to hurt him" and "attempted to kill him, but . . . didn't mean to attempt to kill him." Throughout this conversation, defendant stated an intention to commit suicide, and was heard going through the house and destroying various items because Rabideau "got everything and [defendant] ha[d] nothing" as a result of their pending divorce. After eventually surrendering to

police, six .22 magnum shell casings were found scattered around the outside of the home and, in addition to the bullet holes found in the truck and in the helmet, a trajectory analysis revealed that two bullets found lodged in the wall of the interior of the home lined up with two bullet holes found in the home's front door and its glass panel. Finally, one bullet entered the left side of Rabideau's lower back above the hipbone and lodged in his chest, where it remains. We find that this evidence supported the jury's conclusion that defendant, armed with a rifle, pursued Rabideau and repeatedly shot at him while intending to seriously injure him or cause his death and, in fact, did shoot and wound him.

Viewing the evidence in a neutral light and deferring to the jury's ability to assess the witnesses' credibility (*see People v Molina*, 79 AD3d 1371, 1376 [2010]; *People v Sanchez*, 75 AD3d 911, 913 [2010], *lv denied* 15 NY3d 895 [2010]; *People v Dorsey*, 3 AD3d at 591-592), we find that the verdict was supported by the weight of the credible evidence and, in fact, a different finding would have been unreasonable (*see* Penal Law §§ 110.00, 125.25 [1]; § 120.10 [1]; § 120.05 [2]; § 265.09 [1] [a]; *People v Dorsey*, 3 AD3d at 592). Further, contrary to defendant's argument, in light of the conflicting expert testimony regarding whether defendant suffered from extreme emotional disturbance on the day of the shooting, the jury's rejection of this affirmative defense does not render the verdict against the weight of the evidence (*see People v Hendrie*, 24 AD3d 871, 874 [2005], *lv denied* 6 NY3d 776 [2006]; *People v Allen*, 13 AD3d 892, 894 [2004], *lv denied* 4 NY3d 883 [2005]).

Finally, we are unpersuaded that defendant's sentence is harsh and excessive. Based on the nature of the offenses committed, including the number of times that defendant shot the rifle, all while Rabideau was attempting to flee, we discern no extraordinary circumstances or an abuse of discretion warranting a reduction of the sentence (*see* CPL 470.15 [6] [b]; *People v Hey*, 74 AD3d 1582, 1583 [2010], *lv denied* 15 NY3d 852 [2010]; *People v Sabin*, 73 AD3d 1390, 1391 [2010], *lv denied* 15 NY3d 809 [2010]). Defendant's challenge to the jury's charge has not been preserved for appellate review, and we decline to exercise our interest of justice jurisdiction (*see* CPL 470.15 [6] [a]; *People v Walker*, 274 AD2d 600, 601 [2000], *lv denied* 95 NY2d 908 [2000]; *compare People v Greene*, 306 AD2d 639, 643 [2003], *lv denied* 100 NY2d 594 [2003]). Defendant's remaining contention that she was denied a formal *Ventimiglia* hearing has been reviewed and is found to be without merit (*see People v Wemette*, 285 AD2d 729, 731 [2001], *lv denied* 97 NY2d 689 [2001]; *People*

*v Holmes*, 260 AD2d 942, 943 [1999], *lv denied* 93 NY2d 1020 [1999]).

Rose, Kavanagh and McCarthy, JJ., concur; Cardona, P.J., not taking part. Ordered that the judgment is affirmed.