(February 23, 2012)

■ The People of the State of New York, Respondent, v Yu-Jen Chang, Appellant. [939 NYS2d 596]—

Spain, J.

Defendant was convicted as charged, following a jury trial, of stalking in the fourth degree and aggravated harassment in the second degree. The charges stem from defendant's unrelenting pattern of conduct between January 2005 and August 2006 in sending hundreds of e-mails to his former wife (hereinafter the victim), using an account she had set up for the sole stated purpose of coordinating his parenting time with their two teenage sons of whom she had sole custody. The e-mails escalated and persisted long after the victim and her attorney directed defendant to cease sending e-mails unrelated to visitation issues and advised defendant that the victim viewed them as harassing and abusive; they contained fleeting references to visitation issues but were predominantly attacks on the victim, including wide-ranging accusations and disparagements. Previously, this Court upheld findings that defendant had committed a family offense based upon the same underlying conduct. Upon his conviction, defendant was sentenced to one year in jail and a no contact order of protection was issued in favor of the victim and children.

As a threshold matter, defendant challenges the subject matter jurisdiction of Supreme Court's Integrated Domestic Violence (hereinafter IDV) part to try and sentence him on these unindicted misdemeanor charges. The summons and accusatory instruments with supporting depositions were filed in

Brunswick Town Court, which acquired jurisdiction over the matter (see CPL 1.20 [1], [24]; 210.05). That jurisdiction was then transferred to Supreme Court's IDV part (see 22 NYCRR 41.1 [b]; 141.1 [b]), and that transfer was in all respects proper. Subject to certain limitations not relevant here, "the New York Constitution vests Supreme Court with the power to hear any case that any other court in the [Unified Court System] could hear" (People v Correa, 15 NY3d 213, 228 [2010]; see NY Const, art VI, § 7). Indeed, subsequent to this trial the Court of Appeals upheld the trial jurisdiction of Supreme Court IDV parts over unindicted misdemeanors charged in misdemeanor informations, upon a proper transfer (People v Correa, supra; see People v Hallenbeck, 81 AD3d 1077, 1078 [2011]).

Defendant's claim that he was improperly permitted to proceed pro se is meritless, given that he made a "knowing, voluntary and intelligent waiver of the right to counsel" (People v Arroyo, 98 NY2d 101, 103 [2002]); he unequivocally adhered to that waiver throughout the proceedings, after "searching inquir[ies]" by Supreme Court in which the "dangers and disadvantages" of proceeding pro se and the value of trained trial counsel knowledgeable about criminal law and procedure were impressed upon him, again and again (People v Providence, 2 NY3d 579, 582 [2004] [internal quotation marks and citations omitted]; see People v Crampe, 17 NY3d 469, 481-482 [2011]). At the June 25, 2007 appearance, defendant, who had discharged his retained counsel, unequivocally declined to accept assigned counsel and indicated that he would retain counsel and, in the meantime, would represent himself. At numerous court appearances up until the September 2008 trial, well over a year later, defendant never retained counsel and steadfastly adhered to his desire to represent and speak for himself; defendant did so despite the court generously affording him repeated adjournments, imploring him to retain counsel or accept an assigned attorney, and advising him that he lacked the necessary skills and knowledge to effectively protect his legal rights.

On the initial trial date in June 2008, Supreme Court reviewed defendant's options, including having assigned counsel (or retaining counsel promptly) or proceeding pro se, and, in its discretion, also offered stand-by counsel to provide legal advice (see People v Mirenda, 57 NY2d 261, 265-266 [1982]); defendant elected to accept stand-by counsel with the understanding that counsel could not speak for him or control his defense. When defendant subsequently expressed dissatisfaction with or confusion about stand-by counsel's role, the court, on numerous occasions, meticulously and endlessly explained counsel's limited

role (i.e., to offer legal advice to defendant); the court also correctly informed defendant that he was not entitled to hybrid representation, which the court in its provident discretion had denied, and that stand-by counsel was not "co-counsel" (*see People v Rodriguez*, 95 NY2d 497, 501-502 [2000]).

Significantly, Supreme Court at all times—including at trial—made it known to defendant that assigned counsel was available to him and could be brought in to defend him, and made every effort possible to persuade him that it was a mistake to proceed pro se and that he was harming his defense, all of which defendant consistently rejected. The court, having presided over defendant's divorce and the family offense petition against him at which he represented himself the majority of the time, and with full knowledge of the court files, was well aware of defendant's advanced college education, work history and experience with legal proceedings, and made sufficiently searching inquiries of defendant's unwavering choice to represent himself, including at trial (*see People v Crampe*, 17 NY3d at 481-482; *People v Providence*, 2 NY3d at 583-584). As defendant timely and unequivocally asserted his constitutional right to self-representation, and the record, viewed as a whole, reflects that he knowingly and intelligently waived his right to counsel and that, while he made the proceedings exceedingly difficult, he did not engage in conduct that prevented "the fair and orderly" disposition of the charges, defendant was entitled to proceed pro se (*People v McIntyre*, 36 NY2d 10, 17 [1974]; *see People v Crampe*, 17 NY3d at 481-483; *People v Providence*, 2 NY3d at 582-583; *cf. People v Arroyo*, 98 NY2d at 103-104), "[r]egardless of his lack of expertise and the rashness of his choice" (*People v Vivenzio*, 62 NY2d 775, 776 [1984]).

Relatedly, we reject defendant's contention that Supreme Court erred by failing to order, sua sponte, a CPL 730.30 mental health examination. "A defendant is presumed to be competent and is not entitled, as a matter of law, to a competency hearing unless the court has reasonable grounds to believe that, because of mental disease or defect, the defendant is incapable of assisting in his or her own defense or of understanding the proceedings against him [or her]" (*People v Planty*, 238 AD2d 806, 807 [1997], *lv denied* 89 NY2d 1098 [1997]; *see* CPL 730.30 [1]; *People v Volfson*, 79 AD3d 1532, 1533 [2010], *lv denied* 16 NY3d 900 [2011]). "The determination of whether to order a competency hearing rests in the sound discretion of the trial court" (*People v Kulakov*, 72 AD3d 1271, 1272 [2010], *lv denied* 15 NY3d 775 [2010], *lv dismissed* 16 NY3d 896 [2011]; *see People v Tortorici*, 92 NY2d 757, 765 [1999], *cert denied* 528 US 834

[1999]). Upon a review of the record, we cannot conclude that the court, which observed and interacted with defendant at great length in this and prior trials, erred in not ordering such an inquiry prior to or during the trial. While defendant was argumentative, often noncompliant, repetitious in the extreme, obstinate and obsessive in making objections, motions and a record for appeal, he was also calm, polite and controlled, and his behavior was not suggestive of incapacity (*see* CPL 730.10 [1]).

After the verdict, defendant discharged stand-by counsel, and Supreme Court ordered a mental health evaluation as part of the presentence investigation (*see* CPL 390.30 [1], [2]); defendant repeatedly failed to cooperate even after successive adjournments and his confinement for that purpose, which also violated the terms of probation he was then serving for having violated a prior order of protection. The court imposed sentence, after taking into consideration the report from the psychiatric center where defendant had been held, in which mental health professionals made observations of defendant and suggested a possible mental health diagnosis. We discern no error or abuse of discretion.

Next, as the People concede, it was error to proceed with opening statements, in which the prosecutor made reference to defendant's prior bad acts against the victim, in the absence of a ruling pursuant to *People v Molineux* (168 NY 264 [1901]) outside the presence of the jury, as requested by defendant prior to trial (*see People v Small*, 12 NY3d 732, 733 [2009]; *People v Ventimiglia*, 52 NY2d 350, 356 [1981]; *People v Fleegle*, 295 AD2d 760, 762 [2002]). After defendant objected, i.e., after opening statements but before testimony, the People made a proffer and Supreme Court ruled that defendant's violations of orders of protection were inadmissible, but allowed the underlying facts to be elicited, and precluded reference to pending charges, but allowed limited testimony of the underlying facts. We discern no error in this ruling (*see People v Doyle*, 48 AD3d 961, 963 [2008], *lv denied* 10 NY3d 862 [2008]).

When the victim testified on direct examination, she briefly recounted her history with defendant, and the prosecutor did not elicit testimony in violation of the *Molineux* ruling. While defendant is correct that the prosecutor had already referenced, in her opening statement, matters subsequently precluded by Supreme Court's ruling, we find this error to be harmless in view of the truly overwhelming evidence of defendant's guilt of the charges here. Indeed, we find no "significant probability" that the jury would have acquitted defendant in the face of that

compelling proof had it not been for this error (*People v Smith*, 2 NY3d 8, 12-13 [2004]; *see People v Rabideau*, 82 AD3d 1283, 1285 [2011], *lv denied* 17 NY3d 799 [2011]). Moreover, defendant himself explored the prohibited material in greater depth during his voir dire and cross-examination of the victim, thereby waiving any claim of prejudice, and appropriate limiting instructions were provided to the jury.

Finally, the order of protection issued by Supreme Court directing defendant to stay away from and refrain from communicating with the victim and their children for a period of five years is permissible and, under these circumstances, is not an abuse of discretion (*see* CPL 530.12 [5]). "When a crime has been committed between members of the same family or household [*see* CPL 530.11 (1) (c), (d) (includes former spouses living apart and persons with children in common)], an order of protection may be issued in favor of the victim of such crime and members of the family or household of the victim" (*People v La Motte*, 285 AD2d 814, 816-817 [2001]; *see People v Goodband*, 291 AD2d 584, 585 [2002]). Given defendant's protracted conduct against the victim, using his children as a means to harass and stalk her, we find no abuse of discretion.

Mercure, A.P.J., Rose, Malone Jr. and McCarthy, JJ., concur. Ordered that the judgment is affirmed.