(April 11, 2013)

█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN A. TINKLER, Appellant. [963 NYS2d 415]—

Lahtinen, J. Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered July 15, 2010, upon a verdict convicting defendant of the crimes of manslaughter in the second degree and endangering the welfare of a child.

The victim, who was the three-year-old daughter of defendant's girlfriend, died as a result of internal bleeding from a significant tear in her mesentery allegedly caused by blunt force trauma to her abdomen. The injury occurred while the victim and her four siblings* were in defendant's care. Defendant was eventually indicted on charges of murder in the second degree, manslaughter in the second degree and endangering the welfare

---

* The other children's ages were one, five, seven and nine. The youngest was defendant's child with his girlfriend. His girlfriend was also pregnant at the time with the couple's second child.

of a child. A jury acquitted him of the top count, but found him guilty of manslaughter in the second degree and endangering the welfare of a child. County Court sentenced him to concurrent prison terms of 5 to 15 years for manslaughter and one year for endangering the welfare of a child. Defendant appeals.

Defendant contends that his manslaughter conviction was against the weight of the evidence. Since a different verdict would not have been unreasonable, we "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). "Great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley*, 69 NY2d at 495; *accord People v Romero*, 7 NY3d 633, 644 [2006]).

Police and emergency personnel who responded to the 911 call testified that defendant told them that, shortly before he called 911, the victim had fallen in the shower and bumped her head. He reportedly dried her off, but observed her lips changing color and she was becoming unresponsive, prompting him to make the 911 call. Police and the emergency personnel who entered the apartment with defendant's permission noted several things that appeared inconsistent with defendant's version, including that the towel with which he allegedly had dried the child had little dampness and the shower area did not appear to have been recently used. They also noted that the child's body and hair were dry, unlike someone who had recently been in the shower. Individuals who provided initial emergency treatment to the victim related that her extremities had already cooled and her eyes were fixed and dilated, all indicating that she had become unresponsive much earlier than reported by defendant. Witnesses noted defendant's lack of emotion and failure to inquire about the status of the child. Bruises were observed on the victim's abdomen area and lower back. Defendant's girlfriend testified that the child was fine during the morning before she left for work and did not have bruises except normal ones on her shins from child's play.

A police officer testified about his conversation with defendant on the date of the child's death and the following day. Defendant provided a detailed written statement, which was received into evidence. Defendant stated that his girlfriend left for work around noon, leaving him in charge of the five children. They started lunch at about 2:30 p.m., the victim became "whiny" and went for a nap around 3:00 p.m. She threw-up

while napping, resulting in her going to take a shower at about 4:15 p.m. He left her in the shower while watching television and, about five minutes later, he heard a "thud." She stated to him that she had hit her head, he observed a "half-dollar" size bump on her head and, as he started to dry her off, she was "wobbly." He left her momentarily and, when he returned, she was lying on the floor and unresponsive, resulting in him calling 911. The officer who took this statement from defendant testified that the 911 call was not received until 4:49 p.m. The officer further indicated that defendant later became a suspect once the autopsy revealed that the child had not died from head trauma, but from internal injuries caused by blunt force trauma.

Four physicians testified, three called by the People and one by defendant. The county medical examiner who performed the autopsy stated that he found no bumps or bruises on the child's head consistent with falling in a shower. He testified that she had fresh bruises on her torso that displayed patterning from a device or object contacting her body. He believed that the bruises were not consistent with typical child's play, but were indicative of abuse. There was a significant quantity of blood in her abdominal cavity that he stated was caused by a large tear in her mesentery. He opined that she likely died within half an hour of the injury. The emergency room physician who treated the victim found no notable head injuries, but did observe bruising near her bellybutton and on her back that he stated were not consistent with normal child's play. Although he stated that the injuries were consistent with intentional trauma, he acknowledged on cross-examination that they could have been caused unintentionally. The People also presented a professor of pediatrics from Brown University Medical School, who had extensive experience treating children. She testified that a child with a mesentery tear as sustained by the victim would be in obvious pain, and unable to eat. She characterized the victim's injury as the worst mesenteric injury she had ever seen and explained that it would take significant impact to cause this type of injury.

The physician called as an expert by defendant testified that the bruises on the victim's body could have been caused by any number of things, including punching, blunt impact, another child kicking while on a swing, and walking into something. He opined that the injury could have occurred as much as two to four hours before death and that, after the initial blow, she might not have had pain. He noted bruises on her head consistent with a fall in a shower. Defendant also testified and denied hitting or hurting the victim in any fashion. He added details

not included in his statement to police, including that when he called the children inside for lunch, he heard thumps on the stairs and found the victim on her hands and knees from a fall.

The proof was circumstantial, and conflicting evidence was presented on some key points during the course of the lengthy trial with many witnesses. The jury made a credibility determination in declining to accept defendant's version of events. The testimony of the police and other emergency personnel, together with the particularly important medical proof presented by the People, set forth an account at odds with defendant's version and strongly supporting his culpability. After reviewing the evidence in the record in a neutral light, while deferring to the difficult credibility determinations by the jury, we are unpersuaded that the verdict was against the weight of the evidence.

Defendant next argues that County Court's *Molineux* ruling warrants reversal. County Court permitted the People to present evidence of other nonfatal injuries revealed in the victim's autopsy, as well as two instances of injuries to the child during the previous six months when defendant was the primary caregiver for the child. "Although evidence of similar uncharged crimes is not admissible to prove a defendant's propensity to commit the specific crime charged, such evidence is admissible if it is probative of a legally relevant and material issue before the court and its probative value exceeds the potential for prejudice resulting to the defendant" (*People v Higgins*, 12 AD3d 775, 777 [2004] [internal quotation marks and citations omitted], *lv denied* 4 NY3d 764 [2005]). It was apparent from defendant's statement to police that there would be an issue as to whether the victim's injuries occurred as a result of an accident. This evidence was relevant to material issues, including the absence of an accident (*see People v Wright*, 81 AD3d 1161, 1162 [2011], *lv denied* 17 NY3d 803 [2011]; *People v Barreto*, 64 AD3d 1046, 1049 [2009], *lv denied* 13 NY3d 834 [2009]; *People v Smith*, 41 AD3d 964, 965 [2007], *lv denied* 9 NY3d 881 [2007]; *People v Wilcox*, 194 AD2d 820, 821 [1993]). County Court's weighing of the probative value against the potential for prejudice could have been more detailed, but its decision to permit this proof to be used at trial did not constitute an abuse of discretion requiring reversal (*see People v Dorm*, 12 NY3d 16, 19 [2009]). Further, limiting instructions were given when the proof was presented during the trial and again in the jury's charge (*see People v Reid*, 97 AD3d 1037, 1038 [2012], *lv denied* 19 NY3d 1104 [2012]; *People v Edmunds*, 21 AD3d 578, 580 [2005], *lv denied* 5 NY3d 828 [2005]).

In its general instructions to the jury, County Court included

a charge regarding a witness testifying to a fact that the witness omitted at a prior time when it would have been reasonable and logical to have stated the fact (*see* CJI2d[NY] Credibility of Witnesses [Inconsistent Statements]). Defendant contends that this constituted error. Defendant had given a detailed voluntary statement to police regarding the pertinent events surrounding the victim's death. He did not include in that statement an account of the victim purportedly falling on the stairs while coming to eat lunch, but he testified regarding such event at trial. Since it would be reasonable to expect defendant to mention all potential injuries sustained by the victim while in his care that day, including this charge did not constitute reversible error (*see People v Savage*, 50 NY2d 673, 679 [1980]; *People v Bornholdt*, 33 NY2d 75, 88-89 [1973]; *People v Struss*, 228 AD2d 711, 713 [1996], *lv denied* 89 NY2d 867 [1996]; *see also People v Wise*, 46 NY2d 321, 326-327 [1978]).

Although defendant received the maximum sentence and had no criminal record, we find no extraordinary circumstances or an abuse of discretion meriting a reduction of his sentence in light of the nature of the crime perpetrated upon a young child entrusted to his care (*see People v Smith*, 41 AD3d at 967). Nor was it an abuse of discretion for County Court to include the two biological children of defendant in its order of protection (*see People v Yu-Jen Chang*, 92 AD3d 1132, 1136 [2012]).

Rose, J.P., Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

