Egan Jr., J.
Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered June 8, 2012, upon a verdict convicting defendant of the crime of assault in the second degree.
On the morning of October 10, 2011, defendant brought the victim—his wife—to the Glens Falls Hospital in the City of Glens Falls, Warren County, where she presented with an acute subdural hematoma on the right side of her brain, multiple bruises and a blood alcohol level of .40%. The victim contended that her injuries had been caused by defendant who, over the course of the preceding few days, allegedly assaulted her at their residence—an apartment located above the Whitehall Marina in the Village of Whitehall, Washington County. The victim thereafter was transferred via LifeFlight to Albany Medical Center in the City of Albany, where she underwent emergency surgery to remove a large blood clot from her brain.
Defendant subsequently was charged in a four-count indictment with assault in the second degree (two counts), unlawful imprisonment in the first degree and coercion in the first degree.[1] The assault counts were premised upon allegations that defendant repeatedly struck and pushed the victim (see Penal Law § 120.05 [1]) and intentionally administered a stupor-producing substance, i.e., alcohol, to her without her consent and for a purpose other than lawful medical or therapeutic treatment (see Penal Law § 120.05 [5]). Following a jury trial, de *1184 fendant was convicted of the alcohol-based assault and was acquitted of the remaining charges. Defendant’s motion to set aside the verdict was denied, and defendant thereafter was sentenced to 2V2 years in prison followed by three years of post-release supervision. This appeal ensued.
To the extent that defendant contends that the jury’s verdict was repugnant, we note that this issue has not been preserved for our review (see People v Hawkins, 110 AD3d 1242, 1244 [2013], lv denied 22 NY3d 1041 [2013]) and, in any event, is lacking in merit. “[A] verdict as to a particular count shall be set aside [as repugnant] only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury” (People v Reichel, 110 AD3d 1356, 1365 [2013], lv denied 22 NY3d 1090 [2014] [internal quotation marks and citation omitted]; accord People v Muhammad, 17 NY3d 532, 539 [2011]). As the sole count upon which defendant was convicted did not share essential elements—most notably, the intentional administration of a stupor-producing substance—with the remaining crimes charged to the jury, the verdict was not repugnant.
Although defendant’s challenge to the legal sufficiency of the evidence was properly preserved for our review, we nonetheless find it to be lacking in merit. Insofar as is relevant here, a person is guilty of assault in the second degree when he or she, “[flor a purpose other than lawful medical or therapeutic treatment, . . . intentionally causes stupor, unconsciousness or other physical impairment or injury to another person, by administering to him [or her], without his [or her] consent, a drug, substance or preparation capable of producing the same” (Penal Law § 120.05 [5]). Even accepting, as defendant posits, that alcohol does not qualify as a “drug,”[2] alcohol clearly is—within the plain meaning of the statute—a “substance”[3] capable of producing “stupor, unconsciousness or other physical impairment or injury to another person” (Penal Law § 120.05 [5]).[4] In this regard, the physician who evaluated the victim in the emergency room at Glens Falls Hospital testified that he could smell *1185 alcohol on the victim and that, in his clinical judgment, it was “obvious . . . that the [victim] was intoxicated.” The victim’s testimony also demonstrated her degree of impairment on the morning in question, as she only vaguely recalled leaving her residence and getting into the car and did not remember going to the emergency room. Although both the emergency room physician and the neurologist who evaluated the victim at Albany Medical Center were of the view that there was a neurological component to the victim’s noted impairment, i.e., “she did not seem [to be] just intoxicated,” there also was ample evidence—namely, the victim’s elevated blood alcohol level— from which the jury could have concluded that the victim’s stuporous condition stemmed, at least in part, from alcohol consumption.
As to the consent and intent elements of the crime, the victim testified that, during the relevant time period, she initially did not know that the SoBe Lifewater and V8 Fusion juice that defendant was providing to her contained vodka, she never asked defendant to bring her beverages that contained alcohol and that, once she became aware that defendant was spiking her drinks, she continued to consume such beverages only because defendant “was right there and [she] was afraid [of] what he would do to [her].” Additionally, various members of the Glens Falls Police Department and the State Police testified as to the oral and written statements subsequently obtained from defendant, wherein he readily admitted mixing vodka with the juice and Lifewater he provided to the victim. Although defendant advised law enforcement officials that the victim was an alcoholic and contended that he was providing her with alcohol in an attempt to induce her to go to the hospital and seek treatment, the jury was free to discredit this explanation, and defendant’s intent may be inferred from the surrounding circumstances (see e.g. Matter of Jesse Z., 116 AD3d 1105, 1106 [2014]; People v Carte, 113 AD3d 191, 195 [2013]; People v Kenyon, 108 AD3d 933, 937-938 [2013], lv denied 21 NY3d 1075 [2013]). Notably, defendant’s stated motivation in this regard is irrelevant (see People v Hibbard, 150 AD2d 929, 930-931 [1989], lv denied 74 NY2d 848 [1989]).
Finally, as to the medical or therapeutic element of the statute, nothing in the record suggests that defendant was a trained medical professional, and his own statements reflect his admitted awareness as to the harmful effects that alcohol consumption had upon the victim’s health. Indeed, defendant was aware *1186 that the victim, whom he believed to be an alcoholic, would “get[ ] bad about every [six] months,” suffered from seizures, had metal plates in her head from a prior head injury and had fallen on at least three occasions in the days leading up to her October 2011 hospitalization. There also was evidence in the record from which the jury could have inferred that defendant was aware that the victim had—separate and apart from her alleged alcoholism—a preexisting liver condition. Despite such awareness, defendant admittedly continued to provide the victim with alcohol. Based upon the foregoing, we are satisfied that the verdict is supported by legally sufficient evidence and, further, is not against the weight of the evidence.
We do, however, find merit to defendant’s claim that County Court erred in permitting testimony regarding a series of prior bad acts and/or uncharged crimes that allegedly occurred in the two weeks preceding October 10, 2011. Although the record reflects that the People filed a written Molineux application in this regard and County Court conducted a hearing with respect thereto, the court thereafter failed to expressly rule on the prior bad acts/uncharged crimes at issue—stating instead that it would consider and rule on each of the challenged acts or crimes at trial. During the course of the victim’s testimony, defense counsel raised various objections with respect to allegations that defendant perpetrated acts of domestic violence against the victim, engaged in nonconsensual sex with her and withheld certain medications from her. County Court summarily overruled such objections, and no corresponding limiting instructions were provided—either at the time such testimony was received into evidence or during the course of the court’s final charge to the jury.
To be sure, “[p]rior bad acts in domestic violence situations are more likely to be considered relevant and probative evidence because the aggression and bad acts are focused on one particular person, demonstrating the defendant’s intent, motive, identity and absence of mistake” (People v Westerling, 48 AD3d 965, 966 [2008]) and, further, may be “relevant to provide background information concerning the context and history of [the] defendant’s relationship with the victim” (People v Wertman, 114 AD3d 1279, 1280 [2014] [internal quotation marks and citation omitted]). That said, even assuming that all of the uncharged crimes/prior bad acts at issue here,[5] which, as noted previously, included allegations of nonconsensual sex, domestic violence, bullying and the withholding of certain medications *1187 from the victim, fell within one or more of the recognized Molineux exceptions (see People v Molineux, 168 NY 264, 293 [1901]; People v Brown, 114 AD3d 1017, 1019 [2014]) and indeed constituted relevant and probative evidence, the record fails to reflect that County Court balanced the probative value of such evidence against its prejudicial effect. More to the point, even further assuming that our review of the record disclosed evidence of County Court’s implicit finding in this regard (see People v Meseck, 52 AD3d 948, 950 [2008], lv denied 11 NY3d 739 [2008]), the record nonetheless reveals that, despite an appropriate request by defense counsel during the course of the charge conference,[6] no appropriate limiting instructions were provided to the jury (compare People v Tinkler, 105 AD3d 1140, 1143 [2013], lv denied 21 NY3d 1020 [2013]; People v Leonard, 83 AD3d 1113, 1117 [2011], affd 19 NY3d 323 [2012]; People v Thibeault, 73 AD3d 1237, 1241 [2010], lv denied 15 NY3d 810 [2010], cert denied 562 US —, 131 S Ct 1691 [2011]). The absence of such instructions clearly impacted the jury’s deliberations—as evidenced by the jury’s inquiry as to whether the coercion charge “encompassted] just the use of alcohol or . . . extend[ed] to unwilling sex.” Finally, while we discern no basis upon which to disturb the jury’s verdict, we cannot say that the proof of defendant’s guilt was overwhelming and, therefore, we are unable to conclude that County Court’s error in this regard was harmless (compare People v Echavarria, 53 AD3d 859, 863 [2008], lv denied 11 NY3d 832 [2008]; People v Meseck, 52 AD3d at 950). Accordingly, the judgment of conviction is reversed and this matter is remitted for a new trial. Defendant’s assertion that he was denied the effective assistance of counsel is lacking in merit, and his challenge to the severity of the sentence imposed is academic in light of our reversal.
Lahtinen, J.E, McCarthy and Garry, JJ., concur.
Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and matter remitted to the County Court of Washington County for a new trial.

. The indictment, which alleged that the crimes occurred on or about October 10, 2011, subsequently was amended—over defense counsel’s objection—to reflect that such crimes occurred on or about October 9, 2011 through October 10, 2011.

. The definition of “drug” includes, among other things, “something!],] and often an illegal substance!,] that causes addiction, habituation, or a marked change in consciousness” (Merriam-Webster Online Dictionary, http:// www.merriam-webster.com/dictionary/drug [accessed Apr. 29, 2014]).

. A “substance” is defined as, among other things, “something (as drugs or alcoholic beverages) deemed harmful and usually subject to legal restriction” (Merriam-Webster Online Dictionary, http://www.merriam-webster.com/ dictionary/substance [accessed Apr. 29, 2014]).

. To the extent that this proposition is not self-evident or otherwise within the common understanding of a layperson, the record contains expert *1185 medical testimony from which the jury reasonably could have drawn such an inference.

. The majority of the errors asserted in this regard were preserved for our review by appropriate application or objection and, as to the balance, we *1187 deem this to be an appropriate instance in which to take corrective action in the interest of justice.

. Notably, although the People opposed defense counsel’s request for limiting instructions at the time of trial, they acknowledged the need for “prompt and proper instruction[s] to the jury” in their pretrial Molineux application.