*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 5, 2015          103759
                                             106109
                                             106172

_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,
         v                            MEMORANDUM AND ORDER

BLAZEJ J. KOT,
                    Appellant.
_____

Calendar Date:  January 12, 2015

Before:  McCarthy, J.P., Lynch, Devine and Clark, JJ.

                    _____


        Margaret McCarthy, Ithaca, for appellant.

        Gwen Wilkinson, District Attorney, Ithaca (Andrew J.
Bonavia of counsel), for respondent.

                    _____


McCarthy, J.P.

        Appeals (1) from a judgment of the County Court of Tompkins
County (Rowley, J.), rendered June 16, 2010, upon a verdict
convicting defendant of the crimes of murder in the second
degree, arson in the third degree and tampering with physical
evidence, (2) by permission, from an order of said court, entered
August 21, 2013, which partially denied defendant's motion
pursuant to, among other things, CPL 440.10 to vacate the
judgment of conviction, without a hearing, and (3) from a
judgment of said court, rendered October 18, 2013, which
resentenced defendant.

Defendant was indicted in June 2009 on charges of murder in the second degree, arson in the third degree and tampering with physical evidence after he murdered his wife while they were out jogging by cutting her throat with a box cutter and then returned to their apartment and attempted to set it on fire. Only weeks before, defendant and the victim had returned from a honeymoon trip to Costa Rica. During the evening following the murder, the police found defendant alone in his car in a parking lot of a state park. When the officer approached the car, he observed dried blood on defendant's sleeve and asked him to lower his window. Defendant instead put the car into gear and led police on a high-speed chase that ended when he drove off the road. When the police got to the car, defendant was unconscious and wearing only a bathrobe; his neck was lacerated and he had a bloodied knife in his hand.

At the jury trial in April 2010, County Court instructed the jury to consider the affirmative defense of extreme emotional disturbance (see Penal Law § 125.25 [1] [a]). Ultimately, the jury convicted defendant on all three counts and the court sentenced him to a prison term of 25 years to life on the second-degree murder conviction and to lesser, concurrent terms on the arson and tampering with physical evidence convictions. Defendant thereafter moved pursuant to CPL 440.10 and 440.20 to vacate the judgment of conviction and the sentence. Without holding a hearing, County Court denied that part of the motion to vacate the judgment of conviction pursuant to CPL 440.10. Finding that defendant received an unauthorized sentence on the arson and tampering convictions, however, the court determined that he should be resentenced on said convictions, which it did in a separate judgment. Defendant now appeals from the judgment of conviction, the judgment resentencing him and, with the permission of this Court, from the order partially denying his CPL article 440 motion.

Initially, we reject defendant's claim that County Court erred by failing to order, sua sponte, a competency hearing pursuant to CPL 730.30. Generally, a defendant is presumed to be competent to stand trial (see People v Tortorici, 92 NY2d 757,

765 [1999], cert denied 528 US 834 [1999]).  If, during a
criminal action, the court "has a reasonable ground for believing
that a defendant is in such a state of [mental disease or defect]
that he [or she] is incapable of understanding the charge,
indictment or proceedings or of making his [or her] defense, it
is the duty of the court to direct him [or her] to be examined in
these respects" (id. [internal quotation marks and citations
omitted]; see CPL 730.10 [1]; People v Yu-Jen Chang, 92 AD3d
1132, 1134 [2012]).  On this appeal, we consider whether the
court abused its discretion (see People v Tortorici, 92 NY2d at
766; People v Duffy, 119 AD3d 1231, 1233 [2014], lv denied 24
NY3d 1043 [2014]).

        Even if, as defendant now claims, the full extent of his
illness was not known because he did not receive adequate medical
care until after the trial, a history of mental illness and/or
suicide attempts does not compel a finding of incompetency or
necessarily require a competency hearing (see People v Duffy, 119
AD3d at 1233; People v Tafari, 90 AD3d 1341, 1342-1343 [2011], lv
denied 19 NY3d 977 [2012]; People v Andrews, 78 AD3d 1229, 1232
[2010], lv denied 16 NY3d 827 [2011] [although the defendant held
delusional ideas he was competent to stand trial]; People v
Clickner, 128 AD2d 917, 918 [1987], lv denied 70 NY2d 644 [1987]
[the trial court did not err in declining to order competency
evaluation when the defendant attempted suicide while awaiting
sentencing]).  Although defendant claims that County Court did
not make sufficient inquiry with regard to his competency, it is
not disputed that the court was able to observe defendant's
behavior and demeanor in the courtroom throughout the trial, as
well as in video excerpts from his discussions with Rory
Houghtalen, the forensic psychiatrist retained to examine him
(see People v Bolarinwa, 258 AD2d 827, 831 [1999], lv denied 93
NY2d 1014 [1999]).  During the trial, Houghtalen did not opine
that defendant was incompetent, and defense counsel at no point
requested a competency hearing.  Notably, during a sidebar,
defendant himself requested to be excused from the courtroom as
the People were about to introduce photographs of the victim's
body, and he made statements at sentencing expressing regret over
killing his wife.  Based on the available information, we cannot

say that County Court abused its discretion in not, sua sponte, ordering a competency hearing (see People v Duffy, 119 AD3d at 1233; People v Yu-Jen Chang, 92 AD3d at 1135). For the same reasons, we find without merit defendant's contention that he was deprived of the effective assistance of counsel due to counsel's failure to request a competency hearing or to present an insanity defense (see People v Hennessey, 111 AD3d 1166, 1169 [2013]).

County Court did not err in denying, without a hearing, defendant's CPL 440.10 motion to vacate the judgment of conviction based on Houghtalen's revised evaluation of what he believes defendant's mental capacity was at the time of the trial. Defendant argues that he was entitled to a hearing on his CPL 440.10 motion as to whether he was capable of understanding and participating in his trial (see CPL 440.10 [1] [e]) and as to whether purportedly newly discovered evidence concerning his mental health would have, if received at trial, resulted in a verdict more favorable to him (see CPL 440.10 [1] [g]). On a motion to vacate, a hearing is required if the submissions "show that the nonrecord facts sought to be established are material and would entitle [the defendant] to relief" (People v Satterfield, 66 NY2d 796, 799 [1985]; see CPL 440.30 [5]; People v Hennessey, 111 AD3d at 1168-1169).

The record here contains numerous facts undercutting any assertion that defendant, at the time of his trial and the pretrial proceedings, was suffering from any mental condition that left him "incapable of understanding or participating in such proceedings" (CPL 440.10 [1] [e]). Up to and throughout the trial, defendant continuously exhibited an awareness of the nuances of the criminal justice process, including, as is pertinent to this discussion, the crucial role that Houghtalen, as his forensic psychiatric expert, would play in his defense. Defendant's forthright disclosures to Houghtalen concerning the dysfunction he observed in his family during his youth, and the mental health symptoms he reportedly experienced in the days and months leading up to his crime, support the conclusion that any psychiatric conditions from which he might have been suffering over the course of the instant criminal action did not prevent

him from recognizing that providing Houghtalen with details of
his mental health history would bolster his defense, nor from
actually supplying such information to Houghtalen.

County Court was aware from the outset of its oversight of
this case that defendant's mental health would be the focus of
the litigation (compare People v Hennessey, 111 AD3d at 1167-
1168). The court had ample opportunity to observe defendant's
demeanor in court and in his videotaped interviews with
Houghtalen, and the court received "extensive written
submissions" from Houghtalen and defendant in support of
defendant's postconviction claim pursuant to CPL 440.10 (1) (e)
(People v Sheppard, 107 AD3d 1237, 1239 [2013], lv denied 22 NY3d
1203 [2014]). Therefore, County Court did not err in rejecting
without a hearing (see CPL 440.30 [1] [a]) so much of defendant's
CPL 440.10 motion as suggested that, at the time of these
proceedings, defendant's judgment was so clouded by mental
disease or defect that he was unable or unwilling to play any
part in defending against the charges (compare People v
Hennessey, 111 AD3d at 1167-1169; People v Fixter, 79 AD2d 861,
861 [1980]). Even accepting as true Houghtalen's determination
that defendant, at the time of his trial, believed his attorney
and Houghtalen to be part of a conspiracy against him, there is
no proof that such delusion rendered defendant unable to
appreciate the nature of these proceedings, or caused him to
refuse to participate in them.

As for defendant's claim under CPL 440.10 (1) (g), even if
it can be said that Houghtalen's recent reevaluation of
defendant's mental health history amounts to newly discovered
evidence, it cannot be said that such evidence "could not have
been produced . . . at the trial . . . with due diligence" (CPL
440.10 [1] [g]). Defendant informed Houghtalen during a midtrial
interview that he believed that Houghtalen and his trial counsel
were part of a conspiracy against him. No reasonable explanation
has been provided for the failure to reassess defendant's mental
health — or the defense's trial strategy — in light of this
disclosure. This is not a situation in which, for example, the
People ignored their obligation to thoroughly investigate the

crime allegedly committed by a defendant whose trial attorney
lacked the resources necessary to mount a viable defense (compare
People v Hildenbrandt, 125 AD2d 819, 821-822 [1986], lv denied 69
NY2d 881 [1987]).  Rather, the findings of Houghtalen's
reevaluation are "not 'newly discovered' within the meaning of
CPL 440.10 (1) (g) since, with the exercise of due diligence,
[they] could have been discovered before [the conclusion of the]
trial" (People v Chaney, 298 AD2d 617, 620 [2002], lv dismissed
and denied 100 NY2d 537 [2003]).

        Turning to the question of whether the findings of
Houghtalen's reevaluation were, as a substantive matter, "of such
character as to create a probability that[,] had such evidence
been received at the trial[,] the verdict would have been more
favorable to [] defendant" (CPL 440.10 [1] [g]), County Court did
not abuse its discretion in concluding that no hearing was
necessary to assess the probative value of Houghtalen's recent
findings and their likely impact on the verdict (compare People v
Page, 115 AD3d 1067, 1069 [2014], lv denied 23 NY3d 966 [2014]).
Because defendant's CPL 440.10 motion was supported by affidavits
from defendant, his trial counsel and Houghtalen, County Court
was not faced with a situation in which it had been presented
with potentially exculpatory statements by individuals whose
credibility it had not had the opportunity to assess in person
during the trial (compare id. at 1067-1069; People v
Hildenbrandt, 125 AD2d at 821-822).  In addition, County Court
observed the jury in this case as it heard Houghtalen testify in
support of the defense's theory of extreme emotional disturbance
pursuant to Penal Law § 125.25 (1) (a), and heard the People's
expert psychiatrist present a theory of malingering and
suggestibility.  Ultimately, the jury chose to reject the
defense's extreme emotional disturbance defense.  Thus, it cannot
be said that there is a "reasonable probability" (People v
McKnight, 306 AD2d 546, 548 [2003], lvs denied 100 NY2d 593, 596,
599 [2003]) that the jury, had it heard Houghtalen testify in
support of a theory of insanity under Penal Law § 40.15, would
have instead rejected the People's expert's theory of malingering
and suggestibility, and returned a verdict more favorable to
defendant.  As such, County Court did not abuse its discretion in

determining that it did not need to hold a hearing to explore
what effect, if any, the findings of Houghtalen's reevaluation
would have had upon the verdict had the jury been privy to them.

Defendant's myriad claims of prosecutorial misconduct
during the People's opening and closings arguments were not
preserved for our review (see People v Studstill, 27 AD3d 833,
835 [2006], lv denied 6 NY3d 898 [2006]).  Defendant's remaining
arguments, including his claim that the People elicited
inadmissible testimony from certain expert witnesses, have been
considered and are without merit.

Devine and Clark, JJ., concur.


Lynch, J. (concurring in part and dissenting in part).

I respectfully dissent only from that part of the
majority's conclusion that County Court properly denied
defendant's CPL 440.10 motion to vacate the judgment of
conviction without a hearing.

On a motion to vacate, a hearing is required if the
submissions "show that the nonrecord facts sought to be
established are material and would entitle [the defendant] to
relief" (People v Satterfield, 66 NY2d 796, 799 [1985]; see CPL
440.30 [5]; People v Hennessey, 111 AD3d 1166, 1168-1169 [2013]).
Here, in addressing the motion, County Court determined that its
review was limited to facts known to the court at the time of
trial, and it noted that neither Rory Houghtalen nor defendant's
counsel requested a competency hearing.  The CPL article 440
review, however, is not so limited and must account for any new,
material information outside the trial record.

Here, defendant's submissions reveal that, in July 2010,
after sentencing and while in state custody, defendant again
attempted suicide and consequently was involuntarily admitted to
a psychiatric center, where he received mental health treatment
until he was discharged in August 2011.  While Houghtalen

initially had determined that defendant was competent to stand trial, he now concludes in an affidavit that, upon review of defendant's medical records — including those generated while he was treated at the psychiatric center — and after meeting with defendant for an unspecified period of time at the state facility in October 2012, County Court should have evaluated defendant to determine whether he was competent to stand trial. Houghtalen explains that, as a result of the treatment received, defendant is now able to fully explain the extent and duration of his psychosis, providing information that he did not disclose prior to trial. Based on what he has learned posttrial, Houghtalen believes that defendant, a "quietly psychotic" individual, would have qualified for an insanity defense (see Penal Law § 40.15). According to Houghtalen, defendant was "morbidly depressed and . . . quite paranoid" during the trial, and his condition interfered with his ability to participate in his defense because, principally, he believed that both his attorney and Houghtalen were part of a larger conspiracy against him. Houghtalen candidly acknowledged that defendant shared this concern during their last interview while the trial was underway, but explains that he did not appreciate the extent of defendant's mental illness. Correspondingly, defendant explains in an affidavit that it was not until he received treatment, and was diagnosed and given antipsychotic medication, that he was "relieved of much of the paranoid and delusional thinking that [he] struggled with every day of [his] life, . . . since [he] was eight to ten years old." I note that, although defendant received a standard mental health assessment while in custody before trial, he did not receive any treatment until after his second suicide attempt.

I am mindful that Houghtalen initially conducted a thorough records review, interviewed defendant at length prior to trial and formulated an opinion to support a defense of extreme emotional disturbance, while ruling out an insanity defense. As such, if this were a matter of an expert witness merely second-guessing himself after a conviction, I would see little, if any, merit to the application. The operative facts here, however, are more compelling. In my view, Houghtalen's affidavit, together

with the supporting affidavit of trial counsel and defendant's own affidavit, were sufficient to warrant a hearing as to whether defendant was competent to participate at his trial, and as to whether such proof creates a probability that the verdict would have been more favorable to defendant (see CPL 440.10 [1] [e], [g]; 440.30 [5]; People v Hennessey, 111 AD3d at 1168-1169; People v Nau, 21 AD3d 568, 568-569 [2005], lv denied 5 NY3d 855 [2005]; People v Fixter, 79 AD2d 861, 861 [1980]).

ORDERED that the judgments and order are affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court