People v Jackson (2018 NY Slip Op 02505)





People v Jackson


2018 NY Slip Op 02505


Decided on April 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

107915

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RAYMOND L. JACKSON, Also Known as JAY, Appellant.

Calendar Date: February 15, 2018

Before: Garry, P.J., Devine, Mulvey and Aarons, JJ.


Martin J. McGuinness, Saratoga Springs, for appellant, and appellant pro se.
Andrew J. Wylie, District Attorney, Plattsburgh (Jeffrey C. Kehn of counsel), for respondent.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered September 9, 2015, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (three counts) and criminal possession of a controlled substance in the third degree (six counts).
Defendant sold cocaine and heroin to confidential informants (hereinafter CIs) in three controlled transactions monitored by police. Thereafter, larger amounts of both drugs were found in his vehicle after a traffic stop. Defendant was indicted on three counts of criminal sale of a controlled
substance in the third degree and six counts of criminal possession of a controlled substance in the third degree. During pretrial proceedings, he was represented by three different attorneys, each of whom was relieved by County Court for various reasons. Defendant then chose to represent himself and did so throughout the subsequent jury trial. He was convicted as charged and sentenced to an aggregate prison term of 13 years, followed by two years of postrelease supervision (hereinafter PRS)[FN1]. Defendant appeals.
A criminal defendant may invoke the right to represent himself or herself when "the request is timely and unequivocal, there has been a knowing and intelligent waiver of the right to counsel, and [the] defendant has not engaged in conduct that would interfere with a fair and orderly trial" (People v Ryan, 82 NY2d 497, 507 [1993]; see People v McIntyre, 36 NY2d 10, 17 [1974]; People v Poulos, 144 AD3d 1389, 1391 [2016]). In determining whether a waiver is knowing and intelligent, a court's inquiry need not follow any prescribed formula, but must be "geared toward accomplishing the twin goals of adequately warning the defendant of the risks inherent in proceeding pro se, and apprising the defendant of the singular importance of the lawyer in the adversarial system of adjudication" (People v Dashnaw, 116 AD3d 1222, 1231 [2014] [internal quotation marks, brackets and citations omitted], lv denied 23 NY3d 1019 [2014]; see People v Arroyo, 98 NY2d 101, 104 [2002]).
We are satisfied that County Court conducted a sufficient "searching inquiry" in response to defendant's request to proceed pro se (People v Slaughter, 78 NY2d 485, 491 [1991] [internal quotation marks and citations omitted]). Defendant repeated his desire to represent himself on several occasions during pretrial proceedings, and County Court engaged him in multiple discussions of the risks of such a course. Defendant was initially represented by assigned counsel, but asked for this attorney's removal shortly after his arraignment, stating that he wished to obtain private representation. Retained counsel represented defendant at the next several appearances and filed an omnibus motion on defendant's behalf. A dispute arose, and this attorney moved to withdraw from the representation. Defendant consented to the withdrawal and the court allowed time to obtain new representation. Defendant then informed the court that he intended to represent himself but wished to have cocounsel. The court advised that cocounsel could not be assigned and conducted an extensive discussion of the risks and disadvantages of self-representation. Defendant then agreed to the assignment of new counsel, who represented defendant at a subsequent Huntley/Wade/Mapp hearing. On the first day of that hearing, defendant's assigned counsel advised the court that he and defendant had "had a bit of a breakdown" in which defendant had threatened to spit in counsel's face after a disagreement about a point of law. Upon the court's inquiry, defendant said that he wished to have this attorney continue to represent him during the remainder of the hearing to avoid delay. Counsel did so, and, at the close of the hearing, defendant again stated that he now wished to represent himself. The court again discussed the risks and disadvantages of self-representation with defendant, relieved his assigned counsel and then conducted a separate inquiry to address the knowing and intelligent character of defendant's request to represent himself. At the close of this inquiry, the court accepted defendant's decision.
Upon consideration of the record as a whole, including all of County Court's various discussions of the subject (see People v Crampe, 17 NY3d 469, 482 [2011]; People v Dashnaw, 116 AD3d at 1231), we are persuaded that the court's inquiry into the knowing and intelligent [*2]character of defendant's waiver was fully adequate. Among other things, the court advised defendant of the dangers of self-representation and discussed the differing roles of counsel and criminal defendants. This advice included several important warnings: that it would be difficult to prepare for trial while incarcerated, that defendant might unknowingly do or say something that would be detrimental, that a trial was an evidentiary proceeding that involved matters in which defendant had little experience and required more than making a speech or an argument, that self-representation could be emotional and subjective, while an attorney could provide objective professional guidance and advocacy, and that the same rules of evidence and decorum that applied to an attorney would apply to defendant. The court ascertained that defendant had previous experience in the criminal justice system, but had never previously represented himself, and that he had studied business administration in college and wished to represent himself because he did not trust the local public defenders. Further, defendant fully acknowledged his understanding that he would be held to the same standards as an attorney and that he unequivocally wished to represent himself. We find that County Court sufficiently "apprised defendant of the perils and pitfalls of proceeding pro se" and properly determined that he acted knowingly and intelligently in exercising his right to self-representation (People v Dashnaw, 116 AD3d at 1232; see People v Providence, 2 NY3d 579, 583 [2004]; People v Vivenzio, 62 NY2d 775, 776 [1984]; People v Yu-Jen Chang, 92 AD3d 1132, 1133-1134 [2012]).
In keeping with County Court's warnings about the risks of self-representation, many of defendant's appellate arguments are unpreserved; we shall nevertheless briefly address their merits in view of his pro se status at trial. The first unpreserved claim is defendant's assertion that some of the indictment counts were rendered duplicitous by the CIs' testimony about their history of buying drugs from defendant (see People v Tomlinson, 53 AD3d 798, 799 [2008], lv denied 11 NY3d 835 [2008]). No modification would be warranted if this issue had been preserved, as the challenged counts clearly reference the dates on which the charged crimes took place, the CIs' testimony that they knew defendant from earlier drug transactions was distinct from their testimony about the charged crimes and, thus, there is no confusion as to the particular acts upon which the verdict was based.
Defendant likewise failed to preserve claims related to evidentiary errors and acts of prosecutorial misconduct, by either objecting to the testimony or requesting limiting instructions (see People v Byrd, 152 AD3d 984, 988-989 [2017]; People v Marshall, 65 AD3d 710, 712 [2009], lv denied 13 NY3d 940 [2010]). He asserts that he was deprived of a fair trial by the improper introduction of evidence of uncharged prior drug transactions, as the People had stated before trial that they had no Molineux evidence, and that County Court erred in failing to analyze whether this evidence fit within an appropriate exception or was unduly prejudicial when balanced against its probative value (see e.g. People v Anthony, 152 AD3d 1048, 1050-1051 [2017], lvs denied 30 NY3d 978, 981 [2017]). Had these alleged errors been preserved, no modification would have been required. The challenged evidence provided necessary background information regarding how defendant became an investigation target, was relevant to defendant's identification and, with one exception, was not unduly prejudicial (see e.g. People v Stevens, 87 AD3d 754, 756 [2011], lvs denied 18 NY3d 861 [2011]; People v Sudler, 75 AD3d 901, 904-905 [2010], lv denied 15 NY3d 956 [2010]). We agree with defendant that the probative value of one CI's testimony that she had engaged in sexual intercourse with defendant in exchange for drugs, although relevant to her ability to identify him, was outweighed by its potential prejudicial impact. We further agree that County Court should have given limiting instructions in spite of defendant's failure to request them (see People v Ward, 10 AD3d 805, 807 [2004], lv denied 4 NY3d 768 [2005]).
Nonetheless, the properly-admitted proof against defendant was overwhelming, [*3]including, among other things, the CIs' testimony and that of the law enforcement officers who monitored the transactions, searched his car and tested the drugs. The extensive physical evidence included the drugs that were the subject of the charged crimes and audio and video recordings of the controlled transactions. Defendant also made certain admissions in the course of his summation regarding the presence of drugs in his car. Therefore, if defendant's claims had been properly preserved, we would have found the errors harmless (see People v Echavarria, 53 AD3d 859, 863 [2008], lv denied 11 NY3d 832 [2008]; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Defendant failed to object to certain statements during the prosecutor's summation that he now contends deprived him of a fair trial (see People v Wynn, 149 AD3d 1252, 1255-1256 [2017], lvs denied 29 NY3d 1136, 1129, 1123 [2017]). If these claims had been preserved, we would have found that most of the challenged remarks, when taken in context, were fair responses to defendant's summation or fair comments on the evidence (see People v Thomas, 155 AD3d 1120, 1123-1124 [2017]; People v Scippio, 144 AD3d 1184, 1187 [2016], lv denied 28 NY3d 1150 [2017]). As for certain remarks that defendant now contends improperly vouched for the CIs' credibility, these comments were, at least in part, responsive to defendant's argument in summation that the charges against him were the result of forgeries and police corruption. While these remarks are troubling and would have been better left unsaid, they were not part of "a flagrant and pervasive pattern of prosecutorial misconduct," and, in view of the previously-mentioned overwhelming proof supporting the CIs' account of events, we find no likelihood that the verdict would have been different if they had not been made (People v Green, 119 AD3d 23, 30 [2014] [internal quotation marks and citations omitted], lv denied 23 NY3d 1062 [2014]; see People v Wynn, 149 AD3d at 1256).
The assertions in defendant's pro se brief are unavailing. Defendant's challenge to the search warrant on the ground that the Aguilar-Spinelli test was not satisfied is without merit, as the CIs were deposed in camera before the issuing magistrate, rendering that standard inapplicable (see People v Mendoza, 5 AD3d 810, 812 [2004], lv denied 3 NY3d 644 [2004]; People v Walker, 244 AD2d 796, 797 [1997]). Defendant did not object to the admissibility of certain drug evidence at trial (see People v Pagan, 103 AD3d 978, 981 [2013], lv denied 21 NY3d 1018 [2013]; People v Wright, 38 AD3d 1004, 1006 [2007], lv denied 9 NY3d 853 [2007]), and his underlying arguments about gaps in the chain of custody — which he did raise during the trial — "go to the weight of the evidence, not its admissibility" (People v Hawkins, 11 NY3d 484, 494 [2008]; accord People v Arce-Santiago, 154 AD3d 1172, 1173-1174 [2017], lv denied 30 NY3d 1113 [2018]). Finally, defendant's arguments about alleged forgeries and evidence tampering by the police presented issues of credibility for the jury that were clearly resolved against him (see generally People v Criss, 151 AD3d 1275, 1279 [2017], lv denied 30 NY3d 979 [2017]).
Devine, Mulvey and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant's aggregate prison term consists of four consecutive terms that add up to 13 years, with two years of PRS on each term. These multiple periods of PRS merge by operation of law, such that defendant is subject to a total PRS term of only two years (see Penal Law § 70.45 [5] [c]). As defendant asserts, the uniform sentence and commitment form erroneously provides that the four two-year PRS periods shall run consecutively. The People acknowledge that the correct total period of PRS is two years, and County Court said nothing during sentencing to indicate a contrary intent. As this error is recognized, remittal for amendment of the form is unnecessary (see People v Chirse, 146 AD3d 1031, 1033 [2017], lv denied 29 NY3d 947 [2017]; People v Dukes, 14 AD3d 732, 733 [2005], lv denied 4 NY3d 885 [2005]; cf. People v Stocum, 143 AD3d 1160, 1163 [2016]).